Harris *v.* Smith.

## HARRIS *v.* SMITH.

*(Nashville.*    March  5,  1897.)

1. STATUTE OF LIMITATIONS.  *Does not run against married woman, when.*

   The statute of limitations does not run during coverture against the right of a married woman to set aside an unauthorized or fraudulent conveyance by a trustee of lands held for her use and benefit, and to recover the lands, where the trustee has estopped himself from suing or joining in her suit by executing the deed.  (*Post, pp. 293, 294.*)

   Cases cited and approved: Herron *v.* Marshall, 5 Hum., 443; Parker *v.* Hall, 2 Head, 642; Bayless *v.* Elcan, 1 Cold., 99.

   Cited and distinguished: Williams *v.* Otey, 8 Hum., 563; Watkins *v.* Specht, 7 Cold., 585; Woodward *v.* Boro, 16 Lea, 682.

2. INNOCENT PURCHASER.  *Informal plea of, available, when.*

   Defendants in an action to set aside a conveyance made by a trustee, on the ground that the conveyance was in breach of the trust and that the proceeds were misappropriated, may avail themselves of proof on pleas of innocent purchaser, embodied in their answers, where none of the pleas, though informal, were excepted to, and issue has been taken upon them, and the cause has gone to proof without objection.  (*Post, p. 294.*)

   Code construed: §§ 6138, 6210, 6244 (S.); §§ 5071, 5143, 5177 (M. & V.); §§ 4328, 4400, 4432 (T. & S.).

   Cases cited and approved: Rhea *v.* Allison, 3 Head, 177; Jarmon *v.* Farley, 7 Lea, 141; Mulloy *v.* Paul, 2 Tenn. Chy., 155.

3. SAME.  *Plea of, not available, when.*

   The plea of innocent purchaser cannot be invoked by one who purchases a trust estate at a sale, authorized and made alone for reinvestment, with notice, upon the face of the deeds or otherwise, of an actual or intended misappropriation or diver-

sion of the proceeds of sale from the purposes of the trust. (*Post, pp. 294, 295.*)

Case cited and approved: Loughmiller *v*. Harris, 2 Heis., 558.

4. SAME. *Plea of, available, when.*

The plea of innocent purchaser is available to protect one, who, without actual or constructive notice of an intended misappropriation or diversion of the proceeds of sale from the purposes of the trust, purchases the trust estate at a sale made for reinvestment, where the purchaser's deed conforms to the terms contained in the deed creating the trust and authorizing the sale. (*Post, pp. 295, 296.*)

Cases cited and approved: Webster *v*. Helm, 93 Tenn., 322; Bank *v*. James, 95 Tenn., 8.

5. TRUSTS. *Purchaser not required to see to reinvestment of proceeds of sale.*

A purchaser of land from a trustee, at a sale made for reinvestment, upon the terms of the original trust, is not required to follow up the consideration and see that it is applied as the trust contemplates. where the deed to him was executed in strict compliance with all requirements of the deed creating the trust. (*Post, pp. 295, 296, 298, 299.*)

Cases cited and approved: Williams *v*. Otey, 8 Hum., 568; Loughmiller *v*. Harris, 2 Heis., 559; Brown *v*. Foote, 2 Tenn. Chy., 263.

6. EVIDENCE. *Presumption.*

A purchaser of land from one to whom it had been conveyed by a trustee, by a deed showing entire conformity to the terms of the deed creating the trust, will not be presumed to have had notice of anything more than is recited in the deed by the trustee. (*Post, pp. 295, 296.*)

7. ESTOPPEL. *Of married woman.*

A married woman cannot set aside a deed made by herself and a trustee, for land held by such trustee as her separate estate in accordance with an antenuptial contract, and recover the land, on the ground that the proceeds had been misappropriated, where she, with full knowledge of the purposes of the deed, and in order to consummate such purpose, executed a written request on the trustee for the conveyance, and joined therein, in strict compliance with the requirements of the antenuptial contract, by which subsequent purchasers of the land

---

Harris *v.* Smith.

---

have been misled into believing there was no defect of title. (*Post, pp. 296–298.*)

Cases cited and approved: Howell *v.* Hale, 5 Lea, 405; Pilcher *v.* Smith, 2 Head, 209; Cooley *v.* Steele, 2 Head, 604; Galbreath *v.* Lunsford, 87 Tenn., 89; Crittenden *v.* Posey, 1 Head, 312; Gates *v.* Cord, 93 Tenn., 334.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. THOS. H. MALONE, Ch.

JOS. H. HORTON for Harris.

BRYAN & CARTWRIGHT, LELLYETT & BARR, C. C. TRABUE, STOKES & STOKES, and HAMILTON PARKS, for Smith.

WILKES, J.   This bill is filed to recover a certain house and lot, situated on the Public Square in Nashville, and also rents for the same while withheld from the complainant; also to remove a trustee and appoint his successor.

On hearing, the Chancellor denied the relief prayed for, and dismissed the bill. The Court of Chancery Appeals affirmed the decree of the Chancellor as to its results, and complainant has appealed to this Court and assigned errors.

The facts, so far as necessary . to be stated, are, that on January 6, 1874, complainant entered into

an antenuptial contract with W. Hooper Harris, which was properly registered on January 9 thereafter. The same instrument conveyed the property in controversy to Erwin Craighead, as trustee for complainant, to be held for her sole and separate use, and as her separate estate. Complainant, on the day after the instrument was executed, intermarried with the said W. Hooper Harris, and is now his wife.

The deed of settlement, or antenuptial contract, before referred to, contains, among other provisions, the following: "The party of the first part [meaning complainant] shall have the power and authority, at any time during said marital connection, to sell and dispose of the said property herein conveyed, by giving directions in writing to said Erwin Craighead, trustee, and by executing a deed signed jointly by herself and said trustee, and the proceeds of such sale shall be reinvested in other property under the same conditions and provisions as contained in this deed."

On October 23, 1886, complainant, being then, as now, the wife of W. Hooper Harris, addressed to Erwin Craighead, the trustee, the following letter of request:

"DEAR SIR—You are hereby authorized and instructed by me to execute a deed in fee simple, with proper covenants, to Francis W. Williams, Alexander G. Black, and Richard P. Williams, to the lot of ground fronting thirty-nine feet, more or

14 P—19

less, on the western side of the Public Square and at the northern corner of Deaderick Street, in the city of Nashville, Tenn., and conveyed by me to you, in trust, by deed recorded in Book 50, p. 395, of the Register's office of Davidson County, Tenn., to which I now refer. The consideration of said deed is the sum of $10,500 in cash, paid to you in trust, and also the conveyance to you, in trust, for my benefit (both upon the same terms and trust as contained in my deed to you, above referred to), of certain lots in Maury and Claiborne's addition to Nashville, fronting 265 feet on Maury Street, and particularly described in a deed to said Williams and others, recorded in the Register's office of Davidson County, Tenn., to which you can refer for a more accurate description. Said deed is found in said office in Book 60, p. 563. When you have executed said deed send it to me, and I will sign and acknowledge same, as required by my deed in trust to you, as aforesaid. Respectfully,

"MARY P. HARRIS."

In obedience to the instructions in this letter, a deed to the property was prepared and executed on November 6, 1886, by Craighead as trustee, and by complainant and her husband, and was duly acknowledged and registered. The letter of instructions above, was made part of the deed and registered with it. The deed recites in its body as its consideration, the payment in cash of $10,500 and the conveyance of other real estate set out in detail.

The deed in its body also recites that the property conveyed is the same property conveyed by the trust settlement and antenuptial contract, referring to it by book and page of the Register's office of Davidson County. The deed is one with covenants of general warranty as to Mrs. Harris and special limited warranty as to the trustee, Craighead.

On March 21, 1887, Williams, Black & Co. conveyed the property to James E. Caldwell for a consideration of $25,000, who afterwards conveyed to Michael, Andrew, and Christian Smith, and through them it came by direct conveyances to the present holders.

The lots referred to in Maury and Claiborne's addition were conveyed to Craighead, trustee, in compliance with the terms and conditions of the marriage settlement. They were afterwards sold, and the proceeds used by the husband.

Caldwell and the Smiths, as well as the trustee, Craighead, Williams, Black & Co., and the present owners and the husband are made parties to the bill, but it was afterward dismissed without prejudice as to Caldwell. The defendants, other than Harris, the husband, and Craighead, the trustee, who are the present owners of the property, set up as a defense that they are *bona fide* purchasers for valuable consideration and with no notice of defects of title, and they rely upon this and also upon the statute of limitations, coupled with adverse possession for more than seven years.

The Court of Chancery Appeals finds, as additional facts, that Mr. Harris was insolvent when he married, and that when the deed was made to Williams, Black & Co., he was indebted to them on speculative ventures in the sum of $22,000, and that the real consideration of the conveyance was $10,500 in cash, $4,500 in the lots specified, and the cancellation of this indebtedness, which was compromised in settlement at $10,000. The Court also finds that Mrs. Harris knew the contents of the deed when it was made, and also the contents of the letter of instructions, and knew that $10,000 of the actual consideration of the transfer was the cancellation and satisfaction of her husband's debt to Williams, Black & Co. The Court finds that the $10,500 cash was paid to Craighead, trustee, and he afterwards, but at what time does not appear, gave to the husband $4,500 of this amount, and that it does not appear what became of the residue. Complainant's counsel states that part of it was used in payment of taxes and other charges against the property, but the Court of Chancery Appeals does not so find. The $4,500 was spent by the husband.

The lots which were received from Williams, Black & Co. in the trade were afterwards sold and conveyed by deeds, in which complainant, her husband, and her trustee all joined, and it does not appear what became of the proceeds, but there is some evidence to show that they were received and used by the husband.

When the property was sold to Williams, Black & Co. it was worth $20,000. Afterwards extensive improvements, to the amount of $16,000, were placed upon it by the Smiths, making the property cost them, in all, about $40,000. It was afterwards conveyed to Mrs. Alice Smith, with general warranty of title, for $36,500, and she had no notice of any claim by complainant, nor of any defect in the title. The $16,000 expended in improvements was borrowed by mortgage upon the property from the defendant insurance company. The present owners, and those under whom they claim, have had actual adverse possession since November 6, 1886.

The contention on the part of complainant is that neither she nor her trustee had any power or authority to make the deed to Williams, Black & Co. for the actual consideration for which it was made, and it is a fraud upon her rights under the trust settlement, and should be set aside and the property restored to her.

It is insisted, in opposition, that she had the power to convey, and is estopped to question the conveyance which she authorized to be made, and that she and her trustee are barred by the statute of limitations of seven years, and that the defendants are *bona fide* innocent purchasers, without notice of any breach of the trust or misappropriation of the proceeds. As to the statute of limitations, the Court of Chancery Appeals was of opinion it did not apply, inasmuch as the complainant was a married woman,

and the trustee, Craighead, had, by his conveyance, estopped himself from suing. We think this is correct, under the cases cited of *Herron* v. *Marshall*, 5 Hum., 443; *Parker* v. *Hall*, 2 Head, 642; *Bayless* v. *Elcan*, 1 Cold., 99.

These cases are distinguishable from cases where the trustee has not estopped himself, such as *Williams* v. *Otey*, 8 Hum., 563; *Watkins* v. *Specht*, 7 Cold., 585; *Goss* v. *Singleton*, 2 Head, 69–78; *Woodward* v. *Boro*, 16 Lea, 682.

The Court of Chancery Appeals was of opinion that all the defendants stand before the Court in proper position to avail themselves of proof upon the pleas of innocent purchasers, inasmuch as none of the pleas have been excepted to and the issue had been taken upon such as were set up in the answers, and the case has gone to proof without objection; citing, in support of their ruling, Code (Shannon), §§ 6138, 6244, 6210; Gibson's Suits in Chy., Sec. 337; *Rhea* v. *Allison*, 3 Head, 177; *Jarman* v. *Farley*, 7 Lea, 141; 1 Dan. Chy. Prac., marg. p. 679; *Mulloy* v. *Paul*, 2 Tenn. Chy., 155.

In this we think there is no error. The Court of Chancery Appeals report that the proof shows that the vendors of the several defendants were seized, or claimed to be seized, in fee; that they were in actual possession, and the consideration in each case was paid without actual notice of complainant's claims, so that the case must turn upon the question whether complainant had the power to

convey, and properly exercised it.   We have already copied the power of sale, as contained in the deed of settlement.   Unquestionably, if the deed of complainant and her trustee to Williams, Black & Co. had upon its face contained recitals which showed that the consideration had been, or was to be, misapplied, or applied contrary to the purposes indicated in the power of sale, in the settlement referred to in it, a holder, under such deed, could not be a *bona fide* purchaser without notice.   If a purchaser have notice of an actual or intended misappropriation of the consideration, and especially if such misappropriation appear upon the face of the deed conveying a trust estate, the purchaser cannot get a good title.   *Loughmiller* v. *Harris*, 2 Heis., 558.   But where there is no notice, actual or constructive, of such misappropriation, and the conveyance, on its face, conforms to the terms of sale contained in the deed creating the trust, the purchaser will get a good title.   *Webster* v. *Helm*, 9 Pick., 322; *Bank* v. *James*, 11 Pick., 8–15.

Clearly, in a contest between complainant and Williams, Black & Co., she would have the right, upon the facts in this record, to set aside the sale, inasmuch as they knew a part of the consideration was to be, and was, paid to them in violation of the trust settlement.   But the deed to them does not show this fact, but, on the contrary, shows entire conformity to the terms of the settlement. A purchaser, looking at such deed as a link in his

chain of title, would know that the first purchaser was not required to see to the appropriation of the purchase money, and he would have a right to assume that the trustee had properly applied it, and that all the parties had acted in good faith and performed the duties imposed upon them by law, and that the consideration was truly · stated. We cannot presume, from the recitals in this deed, that any subsequent purchaser had notice of anything more than the deed recites, or that there was any consideration other than as there stated in the deed, or that the consideration, as stated, was either actually misappropriated, or was intended to be misappropriated.

We are also of opinion that complainant cannot now set aside the deed made by her with a full knowledge of its purposes, when, in order to consummate that purpose, she executed a written request and conveyance strictly complying with the requirements of her antenuptial contract, and subsequent purchasers were thus misled into believing that there was no defect in the title, and, under this belief, paid the consideration for their purchases and expended large sums in the way of improvements. It cannot be doubted but that she intended her conveyance to show a compliance with her power, and her failure to show that a part of the consideration was to be misapplied, operated, whether so intended or not, to mislead purchasers, who were justified in believing that the power was being executed in all

Harris *v.* Smith.

respects as the deed of settlement provided. Her
deed, with the letter of request embodied in it, was
a continuing representation through the public records
that she had complied with the power conferred by
the antenuptial contract. Although a married woman,
she must be estopped whenever her action would
operate as a fraud, whether so intended or not.
*Howell* v. *Hale*, 5 Lea, 405; *Pitcher* v. *Smith*, 2
Head, 209; *Cooley* v. *Steele*, 2 Head, 604; *Galbraith*
v. *Lunsford*, 3 Pick., 89; *Crittenden* v. *Posey*, 1
Head, 312; *Gates* v. *Card*, 9 Pick., 334.

In *Howell* v. *Hale* it is held that a married
woman is estopped to deny the consideration for
the execution of a mortgage on her separate estate,
as against an assignee whom she induced to pur-
chase the mortgage debt.    5 Lea, 405.

In *Pilcher and Cataulis, Admrs.*, v. *Richard
Smith and wife*, it is held that if a married woman
covenant to convey land, and by reason of her
coverture her covenant is void, she cannot avoid
the contract unless she restore the purchase money.
2 Head, 209.

In *Cooley* v. *Steele* it is held that if a married
woman makes a solemn disclaimer, on oath, of title
to slaves which are legally hers, she is estopped
from afterwards claiming them.    2 Head, 604.

In *Galbraith* v. *Lunsford* it is held that a mar-
ried woman may, by acts *in pais* done without any
intentional fraud, estop herself to assert title to her

realty against persons misled to their prejudice by such acts.    3 Pickle, 89.

In *Crittenden* v. *Posey* it is held that if a wife fraudulently induced others to purchase her slaves, she would · be estopped from asserting her right to them.    1 Head, 312.

In *Gates* v. *Card* it is held that a married woman who joins her husband in the execution of a deed, estops herself to dispute the grantee's title thereunder, although her name does not appear in the face of the deed as grantor.    9 Pick., 334–341.

The letter of instruction incorporated in the deed made by complainant, so far from conveying any notice or intimation of any actual or contemplated misappropriation, expressly states that the cash is to be paid to her trustee in trust, and the lots to be conveyed to him in trust, and uses this language, "Both on the same terms and trust as contained in my deed to you, above referred to," to wit, the deed of settlement, or antenuptial contract, specifying the book and page where it could be found, and referring to it for more specific description, etc. This was notice, therefore, to purchasers that the property was being sold for purposes of reinvestment, as the trust provided, although that expression is not used in the instrument in so many words. This being so, purchasers were charged with no further duty, and could presume the proper reinvestment by the trustee, unless we hold that it is the duty of the purchaser, in such cases, to follow up

`Harris *v.* Smith.`

and see that the consideration or purchase price has been applied as the trust contemplates, a doctrine which now finds no sanction in our law, as is conceded by complainant's counsel. See *Williams* v. *Otey*, 8 Hum., 568; *Loughmiller* v. *Harris*, 2 Heis., 559; *Brown* v. *Foote*, 2 Tenn. Chy., 263.

We are of opinion, therefore, that there is no error in the decree of the Court of Chancery Appeals, and it is affirmed with costs.