### NEWMAN et al. v. SCHWERIN et al.

(Circuit Court of Appeals, Sixth Circuit. June 4, 1901.)

#### No. 894.

1. TRUSTS—ENFORCEMENT OF TRUST IN LANDS—WRONGFUL ACTS OF TRUSTEE.

Complainant owned an undivided one-half interest in certain lands, against which defendant S., whose wife was also a part owner, established a lien, and obtained a decree of sale. Pending such sale, complainant and S. and his wife entered into a written agreement, by which S. was authorized to purchase the lands, bidding any amount necessary therefor, and being required to bid at least $21,000, if necessary, but not more. The agreement further provided that, "should said property be bid off by S., or for him" he should hold one-third of the same in trust for complainant, subject to the payment from the proceeds of all the lands of his judgment, and all other costs and necessary expenditures, and a further sum, to be charged on complainant's interest, for his services in looking after the same. S. subsequently entered into an agreement with his co-defendants to form a corporation which should purchase the lands. S. agreed to transfer to the purchaser his judgment, and to assume the payment of the remaining sum necessary to be bid, and was to receive one-half the stock of the corporation, his co-defendants conveying to the corporation other lands, and receiving the remaining stock. The land was bid off in the name of the corporation for $21,100. The sale was confirmed, and one-half the net surplus was awarded to complainant, and accepted by her. *Held*, that the later agreement was, in substance and legal effect, one for the sale of the lands by S. to the corporation, and hence the purchase at the sale was "for" him, within the meaning of the trust agreement; and that complainant was entitled to enforce the trust, subject to the requirement that she refund the surplus proceeds of the sale received by her, in the absence of clear proof that she received the same with knowledge of the facts, or that the corporation was a bona fide purchaser without notice.

2. SAME—WAIVER OF RIGHTS BY CESTUI QUE TRUST—ACQUIESCENCE.

It was incumbent on S., as trustee, the purchase having been made for him with intent to defeat the trust agreement, to advise complainant fully and explicitly as to all the facts, before he could claim that by the acceptance of her share of the surplus proceeds of the sale she acquiesced in the abrogation of the trust, or waived her rights thereunder; and the burden rested on the defendants pleading such defense to sustain it by full, clear, and satisfactory proof.

3. SAME—TRANSFER OF PROPERTY—DEFENSE OF BONA FIDE PURCHASER.

To defeat a trust agreement affecting lands on the ground that a defendant who subsequently acquired such lands was an innocent pur-

chaser for value, and in good faith, such defense must be explicitly pleaded, notice should be denied in the fullest and clearest manner, and all facts alleged necessary to constitute such defendant a bona fide purchaser for value paid.

## Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

This is a bill which seeks to set up and enforce a trust in behalf of complainant Mrs. Newman in and to an undivided one-third interest in a large body of unimproved mountain land, the title to which is now in the defendant corporation, the Central Land & Coal Company. Prior to the trust asserted, this body of land was owned by Mrs. Mamie Newman, Mrs. Victoria Schwerin, and Mrs. Lena Fink, as tenants in common; Mrs. Newman's interest being an undivided one-half, while her two co-tenants each owned an undivided one-fourth. The defendant Morris Schwerin, husband of the defendant Victoria, had for many years managed the property as agent for the tenants in common. On January 19, 1897, in the case of Cother et al. against Schwerin et al., a cause pending in the circuit court of the United States for the Eastern district of Tennessee, to which all of the then co-tenants were parties, Morris Schwerin recovered a decree against them jointly for $13,-673.97, which was declared to be a lien upon the whole body of land. For the purpose of enforcing this lien, the lands were ordered to be sold. Being unable to otherwise protect themselves against a probable sacrifice of their interests, the complainants, on February 11, 1897, entered into a written agreement with the defendants Morris Schwerin and his wife, Victoria, by which Morris Schwerin agreed to buy said lands at the commissioner's sale, "or to cause same to be bought," "for the uses and trusts hereinafter named, as cheaply as he can, running up the property to any price necessary to buy said property, he being unlimited as to the maximum amount he shall bid in order to secure said property at said sale; but he, the said Schwerin, agrees and binds himself to bid or cause to be bid at least $21,000 for said property, if necessary to bid that much in order to secure and purchase said property at said sale. He may bid more than this amount, but must not permit said property to be sold to any third party for less than $21,000. In the event any third person offers more than $21,000 for said property at said sale, said Schwerin shall not be required to bid more than that amount, but may let the property be purchased by others." By section 3 of said agreement it was provided as follows: "Should said property be bid off by Schwerin, or for him, then he is to hold, or cause said property to be held, subject to the following uses and trusts: (1) The said Morris Schwerin and his wife are to have and own an undivided two-thirds (⅔) interest in said lands, and the said Mrs. Mamie Newman is to own the other undivided one-third interest in said lands. (2) All of said lands are to be charged with the decree rendered by the said United States circuit court in favor of M. Schwerin, with interest thereon from the date of said decree, together with the reasonable and necessary expenses which may have been incurred since the taking of the account in said cause, and which may hereafter be incurred by said M. Schwerin in paying taxes and otherwise protecting said property. Said decree and said expenses are a first lien on said land, two-thirds therein being on the interest of Mr. and Mrs. Schwerin, and one-third on the interest of Mrs. Mamie Newman, which is to be first paid and satisfied when said land is sold, as herein afterwards provided, before any money is paid Mrs. Newman or Mrs. Schwerin. (3) In addition to the reasonable and necessary expenses paid by said M. Schwerin for the protection of said lands, Mrs. Mamie Newman shall also allow him $25 per month for looking after, protecting, and selling said land, which shall be a charge on her one-third interest in said land alone, of equal dignity and priority with the lien created in favor of said decree, said monthly charges being placed on the same footing as said decree, and to be paid in the same way as to Mrs. Newman's interest in said land. In consideration of said monthly allowance or charge, said Schwerin obligates himself to look after said lands, protecting them from trespassers, pay the taxes

on them, and do whatever is necessary to protect them and preserve the trust." It was also agreed that, if the lands should be bought by said Schwerin for more than the amount of his decree, he should not be required to pay into court any greater sum than necessary to pay off the interest of Mrs. Lena Fink in such surplus. The sixth and last clause of said contract was in these words: "In the event said property at said commissioner's sale brings more than $21,000, and is not bid off by said Schwerin, or for him, or in his interest, then this agreement becomes null and void, and the rights of the parties hereto will be allowed to stand and remain as fixed by the said decree of said court, as though this agreement had never been entered into." This agreement was duly signed and duly acknowledged by all the parties, but was not registered. The master's sale occurred April 20, 1897, and he reported the lands as sold to the defendant (appellee here) the Central Land & Coal Company for the price of $21,100. He also reported that in payment of this bid said company had acknowledged satisfaction of the decree in favor of Morris Schwerin for $13,673.97, same having been assigned to said company by Schwerin, and had paid in cash $742.60, and executed notes for balance of bid, with the defendants F. G. and W. F. Niedringhaus as sureties. On May 24, 1897, this report of sale was confirmed, and title vested in the Central Land & Coal Company, subject to a lien to secure unpaid purchase money. That decree then proceeded by reciting that it appeared to the court that Mrs. Mamie Newman was the owner of one-half of the proceeds of the sale, after paying off the costs and the decree in favor of Morris Schwerin, and that Mrs. Lena Fink and Mrs. Victoria Schwerin were each entitled to one-fourth of such surplus proceeds of sale. It was then ordered that the master should pay the said parties the surplus fund arising from said sale remaining in his hands as collected, "one-fourth to Mrs. Victoria Schwerin or her counsel, one-fourth to Mrs. Lena Fink or her counsel, and one-half to Mrs. Mamie Newman or her counsel." A lien was declared upon Mrs. Newman's share in favor of her counsel, and their fee fixed, by agreement, at $750, and ordered to be paid by the commissioner out of the first moneys coming to Mrs. Newman, "except that the commissioner is ordered to pay to Mrs. Mamie Newman $150 out of the cash paid into court." It further appears that under some arrangement, not explained, the notes of the purchaser were paid over on account of Mrs. Newman's interest, which were afterwards discounted, and that by this means Mrs. Newman received her entire interest in the surplus arising from the sale prior to the filing of this bill on January 8, 1898.

The bill is somewhat inartificially drawn, and the learned counsel for complainants were evidently uninformed as to all the facts relating to the acquisition of said lands by the defendant the Central Land & Coal Company. The bill, however, substantially charges that the said lands were bid off by Morris Schwerin, or for him, within the true meaning and import of the agreement by which he was to either buy or cause said lands to be bought for himself and his cestui que trust, Mrs. Mamie Newman. It is, in substance, charged that, for the purpose of concealing the facts that said property had been bought "for him," Schwerin had combined with the other defendants F. G. and W. F. Niedringhaus, and their agent, the defendant Joseph B. Johnson, and procured the said Johnson to bid same off in the name of the Central Land & Coal Company, there being in fact at that time no such corporation in existence; that, after the sale had been confirmed, the said Schwerin and his confederates had procured the organization of a corporation under a New Jersey charter, they being the incorporators. It is then charged "upon information and belief" that the arrangement made and entered into by and between defendants was substantially this: "The defendants Niedringhaus and Johnson were to pay and discharge the sum of $7,426.03 in consideration of an undivided one-third of the lands, and for the lien of $13,673.97 defendants Morris Schwerin and wife, Victoria, were to receive an undivided two-thirds of said lands. That the Central Land & Coal Company was organized for the purpose of the better carrying out of this arrangement, and for the further purpose of concealing from complainants these facts; and that the stock of this company has been appor-

tioned among defendants in about these proportions: The defendants Niedringhaus are known to be the owners of large tracts of land in Cumberland and Fentress counties, as has already been stated, and it may be that these have also been pooled under the arrangement with defendants Schwerin, and that the stock of this company may have been apportioned so as to include the Niedringhaus lands; but as to all these facts the defendants are called upon to answer." The prayer of the bill is that the said lands be declared subject to the trusts of said agreement, or that she have relief against the shares of stock in the name of her trustee, Schwerin.

The answer of Morris Schwerin, among other things, says: That the Newman lands were covered with numerous conflicting claims, some of which were held by the defendants Johnson and the Niedringhauses, or by various corporations controlled by them; and that, being anxious to settle all conflicts, he had entered into an agreement with the defendants as follows: "It was agreed that a corporation should be chartered and organized, to be known as the Central Land & Coal Company, with a capital stock of $300,000. At the sale made by the commissioner in the case of Cother v. Schwerin, aforesaid, the lands were to be bid in by or for said Central Land & Coal Company at the price of $21,000; and, to enable it to make said purchase, defendant Morris Schwerin transferred to said Central Land & Coal Company his judgment for $13,673.97, constituting a first lien on said lands. Thereupon, at said sale, J. B. Johnson, for the Central Land & Coal Company, bid in the aggregate $21,100 for said lands, and in payment thereof receipted the judgment in favor of said defendant, which had been transferred and assigned to it as aforesaid, and for the balance of its bid, being the sum of $7,426.03 after paying the sum of $742.60 in cash, they executed their notes, with defendants F. G. and Wm. F. Niedringhaus as security. Defendant Morris Schwerin assumed and agreed to repay to said Central Land & Coal Company said sum of $7,426.03, and in consideration thereof, and of the transfer and assignment of his judgment aforesaid for $13,673.97, said Central Land & Coal Company agreed to and did issue to said defendant one-half, or $150,000, of its capital stock. The defendants Johnson and Niedringhaus and the corporation which they represented also conveyed to said Central Land & Coal Company all their titles, claims, and possessions in and to any of the land embraced within the several grants in Cumberland county involved in said suit of Cother v. Schwerin, with the exception of certain tracts which they reserved; and in consideration of and payment for such conveyance the Central Land & Coal Company issued to said defendants the remaining one-half of its stock, of the par value of $150,000." The Central Land & Coal Company and J. B. Johnson and F. G. and Wm. F. Niedringhaus join in a separate answer, in which the agreement with Schwerin is admitted in substantially the same terms. Schwerin denies that this agreement was made with any purpose of defrauding complainants, and says "its sole purpose was to make said lands bring their value, to carry out the provisions of the contract between complainants and these defendants, and to enable the complainants to realize something out of the property over and above the amount of defendant's judgment"; and that, but for such arrangement, the property would not have brought the amount of his decree. In respect to Mrs. Newman's knowledge of the matter, his answer states "that complainants, Newman and wife, were advised, immediately after the sale, of the fact that said lands had not been purchased by defendant Morris Schwerin, but by the Central Land & Coal Company. They also knew and insisted at that time that said defendant was interested in the Central Land & Coal Company; yet they accepted their share, being one-half of the surplus arising from the said sale, which amounted to over $3,000, without any objection or protest. "And defendants respectfully submit that said complainants cannot now be permitted to come in and repudiate said sale, and claim an interest in said lands, without at least paying back to defendants the amount received by them from the proceeds of sale. And defendants rely upon the failure of complainants to repay the money received by them from the proceeds of sale as a defense to their attempt to now repudiate and set aside as fully as if specially pleaded."

109 F.—60

Upon the pleadings and proof the court below dismissed the bill. From that decree complainants have appealed and assigned error.

J. H. Acklen and John A. Pitts, for appellants.

Robert Pritchard, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, having made the foregoing statement of facts, delivered the opinion of the court.

Under the admitted facts of this case it is most obvious that the defendant Morris Schwerin was the actual purchaser of the lands sold under the decree in the case of John H. Cother, Adm'r, against Morris Schwerin and others. His agreement with his associates in the promotion of a corporation to be known as the Central Land & Coal Company was, in substance and legal effect, that he would sell these lands to that corporation for $150,000 in its capital stock. To carry out this plan, it was necessary that he should buy the lands at the pending sale. Most probably for the purpose of concealing the fact that he was the purchaser from the complainants, he arranged that the lands should be bid off in the name of the projected company by one of its promoters, and that he should pay the purchase price to the commissioner. This he did by transferring his decree to the fictitious corporation, and by subsequently paying the deferred purchase-money notes executed in its name. The plan was calculated to mislead and deceive Mrs. Newman by inducing the belief that the land had been bought by a stranger, and not by Schwerin, and that she had, therefore, no interest in them. The third clause of the agreement distinctly provides that, "should said property be bid off by Schwerin, or for him, then he is to hold, or cause said property to be held, subject to" the uses and trusts therein stated. The property was "bid off by Schwerin, or for him," and came at once under the terms of the trust. That he was not obliged to bid more than $21,000 if more than that sum should be offered by a third person, may be conceded; and, if it had been shown that the property had been bought by a third person at a price in excess of $21,000, Schwerin would be under no further obligation by reason of his contract. So, if he had been limited to a maximum, he might buy for himself, by bidding in excess of the maximum amount he might bid as trustee. But under the second clause of the agreement it was expressly provided that he might run up the property "to any price necessary to buy said property, he being unlimited as to the maximum amount he shall bid in order to secure and purchase said property at said sale." The contention, therefore, that he was at liberty to buy for himself if his bid should exceed the amount he was obliged to bid against a third person, has no foundation. When Schwerin bought this property, or caused it to be bought for himself, he became a trustee for Mrs. Newman, and the lands in his hands constituted a trust estate for the uses and purposes defined in the third clause of the agreement set out in the statement of the case. But it is urged very strenuously that the complainants are estopped to claim any interest in the land, having received one-half the sur-

plus purchase money arising from the sale. It is very obvious that Mrs. Newman cannot be entitled to both the land and its proceeds. If she has received her share in the proceeds of the sale with full knowledge of all the facts essential to a reasonable exercise of her right to determine whether she would confirm the purchase by her trustee, Schwerin, and receive the proceeds of the sale, she should not be now heard to assert an interest in the land inconsistent with her election to take the purchase money. But, before she can be held to have waived or confirmed Schwerin's purchase of this property for himself, and in repudiation of her rights and his duties as trustee, it should clearly and fully appear that she knew all of the facts and circumstances necessary to enable her to act intelligently in respect to her interests. In neither the report of sale nor the decree confirming it and directing that she should be paid one-half of the proceeds of sale was there anything to indicate that Schwerin was himself the purchaser, or that it had been bought for him. Indeed, the report of sale and the decree of distribution proceeded upon the assumption that the property had been bought by a third person. She had, therefore, a right to suppose that the trust agreement between herself and Schwerin had become null and void by the purchase of the property by a third person, and that the proceeds of sale were properly distributable upon the basis of the rights of the tenants in common as fixed in the original decree inter partes. It was Schwerin's duty to execute the trust according to its terms. If he bought the property for himself, or had it bought in pursuance of a personal arrangement which would defeat Mrs. Newman's plans for the preservation of her interests, it was his duty to have fully advised her; and she was under no duty, under the circumstances, to inquire before acting upon the truth of the assumptions of the decree of distribution. 2 Perry, Trusts, §§ 850, 851; Randall v. Errington, 10 Ves. 423, 427.

Acquiescence cannot be inferred from the mere receipt of the proceeds of a sale which purported to be to a third person. To operate as an acquiescence in the purchase of the lands by Morris Schwerin for his own purposes, and free from the trusts upon which he had agreed to buy, it must be shown that Mrs. Newman had full and explicit knowledge that the lands had, in fact, been bought by Schwerin, and not by a stranger. Acquiescence is a defense which must be made out fully, clearly, and satisfactorily by the party setting it up. That it may be made out by circumstances may be conceded. There is in this record no direct, positive evidence bearing upon this question, and no such circumstances as to justify us in holding that such a defense is made out by that degree of full, distinct, and satisfactory evidence which should be required when a trustee defends his breach of trust by asserting the acquiescence of his cestui que trust in his own wrongful conduct. The agreement by which Schwerin should hold a one undivided one-third interest in these lands in trust for the complainant Mamie Newman is binding upon him, and upon all who took the lands under him, except a purchaser for value, in good faith, and without notice of the trust. The

defense of innocent purchasers for value and in good faith is a defense which must be explicitly made by plea or answer. Notice should be denied in the fullest and clearest manner. Pom. Eq. Jur. §§ 784, 785; High v. Batte, 10 Yerg. 335; Smitheal v. Gray, 1 Humph. 491, 34 Am. Dec. 664; Harris v. Smith, 98 Tenn. 294, 39 S. W. 343; Boone v. Chiles, 10 Pet. 176, 211, 9 L. Ed. 388. The answer of the Central Land & Coal Company contains no such defense. The references in the answer of that company to the contract between Mrs. Newman and Morris Schwerin are indefinite and evasive. Notice of that agreement should have been denied in the fullest and clearest manner, as well as of all circumstances referred to in the bill from which notice might be inferred, and the answer should include all those particulars which are necessary to constitute a bona fide purchaser. Pom. Eq. Jur. § 785. The answer is grossly defective in all that is necessary to the proper making of such a defense.

When was the stock of the corporation issued to Schwerin? It may have been issued after the filing of Mrs. Newman's bill from all that appears. We conclude that the Newman lands are subject to the trust of the agreement, and that the Central Land & Coal Company must be declared to hold an undivided one-third of the lands obtained from Schwerin through and under the judicial sale made April 20, 1897, subject to the trusts stated in the agreement of February 11, 1897. Inasmuch as Mrs. Newman seeks equity, she must do equity. The purchase money received by her must be paid back to the defendant Schwerin, and a lien upon her interest in the land should be declared to secure it. If within a reasonable time, to be settled by the court below, she does not pay into the registry of the court the purchase money received by her, the court should direct a sale of her undivided interest in the land recovered herein, or so much as may be necessary for the purpose of restoring to defendant Morris Schwerin the purchase money so unadvisedly received by her. With respect to the liability of Mrs. Newman's lands for her one-third of the decree in favor of Schwerin this court makes no direction, as that liability is fixed by the trust agreement itself, and the court has not been called upon to enforce it by any pleading in this cause. The costs of the court below and of this court will be paid by defendants Schwerin and the Central Land & Coal Company.