DUGGAN v. WETMORE et al.

PRENDERGAST CO. et al. v. DUGGAN et al.

(Circuit Court of Appeals, Sixth Circuit. March 2, 1915.)

No. 2522.

1. ADVERSE POSSESSION ⬤⟿104—POSSESSION WITHOUT COLOR OF TITLE—PRESUMPTION OF TITLE.

Under the law of Tennessee, actual and continuous possession of land for 20 years, whether or not under color of title, is at least presumptive evidence of title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 595–602; Dec. Dig. ⬤⟿104.]

2. ESTOPPEL ⬤⟿70—EQUITABLE ESTOPPEL—GROUNDS.

Complainant had presumptive title to a tract of land in Tennessee by inheritance from her father, who had been long in possession, although apparently without any paper title. She and her husband moved on the land, but remained only two weeks, and never resumed possession; the land being then of small value. Five years later her stepfather and her mother joined in a conveyance of the land, and their grantee and his successors remained in possession for 29 years, when complainant brought suit to recover the land, which had been much improved and had largely increased in value. During all this time complainant and her husband had lived in the vicinity, knew of the conveyances, possession, and im-

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

provements, but complainant had asserted no claim. *Held* that both claims of title being based on presumptions only, arising from possession without color of title, complainant's apparent abandonment created an estoppel which in equity barred her recovery.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 183–187; Dec. Dig. ☞70.]

3. HUSBAND AND WIFE ☞62—ESTOPPEL—MARRIED WOMEN.

The fact that a married woman is exempted from the operation of the statute of limitations governing actions of ejectment does not save her from the effect of an estoppel which would bar her right to recover the land in equity.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 282–284, 363; Dec. Dig. ☞62.]

Appeals from the District Court of the United States for the Southern Division of the Eastern District of Tennessee; Edward T. Sanford, Judge.

Suit in equity by Martha Jane Duggan, by W. L. Kinser, her next friend, against George P. Wetmore, the Prendergast Company, and H. H. Duggan, with cross-suit by the Prendergast Company and George P. Wetmore against Martha Jane Duggan and husband. Decree for defendants, and cross-complainants and complainant appeals. Affirmed.

The 100 acres of land in controversy, occupied in 1910 by the Prendergast Company, is claimed by Mrs. Duggan as the sole heir of her father, Robert Grigg, who died in 1861, who had occupied at least some part of the land since 1845, and who had succeeded to the rights of his father, an occupant since 1829. He left him surviving only his daughter and his widow, Sarah Grigg. She later married Benjamin E. Cass and went to live upon his farm some 10 miles away, and the daughter, then about 8 years old, practically became and grew up as the younger sister of the Cass children by his former marriage, and in all respects a member of the Cass family. Mr. Cass exercised supervision over the land in question, and rented it out to successive tenants, until 1881. In 1876 this daughter had married H. H. Duggan, and she and her husband had gone to make their home upon this 100 acres. They stayed only two weeks. The buildings were poor, the land, so far as cleared, very light or exhausted, and the place was of little value, so that they decided not to try to make a living there, and moved back near Mr. Cass. He was providing each of his own children with a farm as each married, and in 1880 he deeded to Mr. and Mrs. Duggan a farm near his own, and they lived there for several years, and in the vicinity always thereafter. The consideration expressed in this deed is love and affection and $200, the place was worth about $700, and the places given to the other children had been worth about $500 each. Herein lies the basis for the claim now made, but denied, that the 100-acre tract was taken over by Mr. Cass as the $200 consideration named in this deed. No transfer thereof was ever made to him by his wife or by Mrs. Duggan, so far as appears. All existing county records were burned in 1895.

In 1881 Mr. and Mrs. Cass deeded the 100 acres to one Harrison by a deed which was, practically, little more than a quitclaim: it warranted only against the acts of the grantors and those claiming under them. Harrison moved upon the property, and he and his successors in title held continuous and actual possession until 1891, when it was conveyed by warranty deed to the parties who afterwards organized the Prendergast Company, to which it was formally conveyed in 1909. In 1910 Mrs. Duggan commenced an ejectment suit in the state chancery court, making the Prendergast Company a defendant. The company removed the case to the court below and there filed a bill asking to have its own title quieted. The court below thought that

Mrs. Duggan's title was not established, that defendant's title was made out by the presumption of grant resting on more than 20 years' possession, and accordingly dismissed Mrs. Duggan's bill and made a decree quieting defendant's title. She brings this appeal from both decrees.

Arthur Traynor, of Cleveland, Tenn., for appellants.
J. B. Sizer, of Chattanooga, Tenn., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. It is the settled Tennessee rule that 20 years of possession, actual and continuous, and whether or not under color of title, "is regarded in law as evidence of title and seisin in fee, and it supplies the absence or loss of grant." Cannon v. Phillips, 2 Sneed (Tenn.) 211, 213. From the numerous Tennessee cases involving this rule, it is not very clear whether the resulting presumption of title in the occupant is practically conclusive or is disputable; but we assume, as the basis of the consideration of this case, that it is disputable. We are not now speaking of that "title in fee" which "vests" by only seven years' possession under a recorded conveyance. Shannon's Code, § 4456.

In 1910 the Prendergast Company was entitled to claim the benefit of the presumption. It and its predecessors in the chain of title had been in unbroken and actual possession since 1881—29 years. The evidence of such possession is not wholly convincing, but both the character of the evidence and the nature of the possession are about as satisfactory as could be expected, with such a property as this was. The question, then, must be whether there is any compelling reason why this prima facie title in the Prendergast Company should not be given effect.

2. We are inclined to give Mrs. Duggan the benefit of some doubts, and to hold that when all possession in her right ended—say, upon the deed to Harrison, in 1881—she was entitled to the benefit of the same presumption from possession for more than 20 years (but not for any period under a recorded conveyance),[1] and that, if seasonably asserted, the Grigg title would then have prevailed against Harrison or his grantees. Whether or not this conclusion would be adopted, if it were controlling, we proceed with the case upon that theory.

3. Here are two conflicting presumptions, leading to contrary results. Which is superior? It must be remembered that Mrs. Duggan shows no grant in fact from the state, nor any possession which by statute gives her a title; if she did, there would be demonstrative proof against mere presumption; but here are presumptions only. One is earlier, and, for that reason, stronger, but is weakened by 30 years of nonaction. The other is later, but is joined to and aided by actual possession. If this appeal presented a question of bare legal rights, as

---

[1] There is evidence which we might accept that a deed (now lost) was made by Mrs. Duggan's uncles to her father, and that it bore some official certificate, but that it informingly described the land or that it had been duly recorded in the proper county is too much dependent on vague recollection to support a judgment overturning nearly 30 years' undisputed possession.

upon an ejectment suit, we would have to determine which would be superior in law; but, for reasons to be stated, we think the case is governed by equitable considerations peculiar to its facts, and the abstract question just stated is not necessary to be determined.

4. The jurisdiction of the state court in equity, and of the United States District Court on its equity side to entertain what was, in practical effect, the ejectment suit brought by Mrs. Duggan against the Prendergast Company, was not challenged in either court, nor has it here been questioned. Some Tennessee decisions indicate that where the husband has been guilty of laches which might bar a suit to recover his wife's estate of inheritance, to which suit he would be a party plaintiff, and where she is not herself affected by such laches, she may file a bill in equity to protect and recover her estate. Upon this theory plaintiff's suit in equity must be planted; and we adopt that theory for the purposes of the opinion.

[2] 5. Plaintiff invokes the aid of equity and must submit to equitable principles. Defendant, by its bill to quiet its title, rightfully seeks the same jurisdiction and becomes subject to the same rules. The question then really is: Which of the two presumptions named in the second preceding paragraph ought to prevail over the other—not according to arbitrary legal rule, but in a court of equity and according to its principles? All conclusions on this subject are colored by the initial fact that Mrs. Duggan and her husband abandoned the property in 1876, and declared their belief that it was then practically worthless. From that time until 1881, Mr. Cass collected what little rental or income there was. In 1881, he sold it to Harrison in payment of some judgment against Mr. Cass' sons, and for $300, payable $100 down, $100 in one year, and $100 in two years. Cass died in 1882. Mr. and Mrs. Duggan knew of this transfer to Harrison. Mr. Duggan was one of the administrators of the Cass estate, and joined in closing it up. No suggestion of claim on account of rentals collected, or of objection to the sale or of claim against the estate on account of the sale, was ever made. Mr. Duggan was a man of intelligence, holding some local offices; he could fully comprehend what was done; it would be natural that Mrs. Duggan should be fully informed from time to time on everything that occurred; and there is no claim that she was not. They continued to live in the vicinity. They knew that this 100-acre tract was continuously occupied, and from time to time sold, under the title initiated by the Cass deed. They must have known that about 1891 a railroad was built through the property, thus increasing its value, and that, running over the period of four or five years before suit was commenced, a valuable sawmill plant had been built and something of a town had grown up on the land. During all this period, they made no claim to the land, and did or said nothing indicating that they thought they had any claim—with one exception. After the railroad was built, Mr. Duggan consulted several lawyers on the subject. He found no one who would take up the case—whether because the Duggan title was thought incapable of sufficient proof, or because defendant's title was thought unassailable through long possession, does not appear. After these spasmodic efforts, running over perhaps two

or three years, and notice of which is not shown to have come to any occupant of the land, the subject was again dropped until this suit was commenced, and during the last interval the most valuable improvements were made.

The record strongly indicates that there was some arrangement or understanding between Mr. Cass and Mr. and Mrs. Duggan, by which Mr. Cass was to treat the 100-acre tract as his. It seems difficult otherwise to reconcile his conceded integrity and high character with the making of the deed and with Mr. and Mrs. Duggan's entire acquiescence; but we can hardly say that any definite contract on that subject is shown by the necessary preponderance of proof. However that may be, and whether their conduct was due to the belief that Mr. Cass' deed had been rightful, or to the conviction that the property was not worth the trouble and expense of reclaiming, their conduct surely evinces a deliberate election to abandon whatever claims they had, and to acquiesce in the ripening and perfecting of the adverse rights. If this election was not at first irrevocable, it became so on the final dropping of the subject after the unsuccessful efforts to get the claim prosecuted and on the great improvements thereafter made by defendant.

It appeared without dispute that the more immediate grantors of the Prendergast Company bought the property for a valuable consideration and in express reliance on the fact of the long-continued possession, sufficient to make an unassailable title. Under these circumstances, to permit the Duggan title to be asserted and to give to her the ownership of all the valuable improvements (said to be the necessary result under Tennessee laws), would be to approve a result equal almost to an active fraud against the occupant.

It is clear that an equitable estoppel resulting from an active fraud may be asserted against a married woman as if she were sole (Galbraith v. Lunsford, 87 Tenn. 89, 9 S. W. 365, 1 L. R. A. 522 and cases cited); but how far and when the legal title to real estate may be divested by that estoppel which results only from silence when one ought to speak, is a vexed question (see, e. g., Brant v. Virginia Coal Co., 93 U. S. 326, 23 L. Ed. 927; discussion of the same in Galbraith v. Lunsford, supra, 87 Tenn. 104, 9 S. W. 365, 1 L. R. A. 522 et seq.; Fletcher v. Fuller, 120 U. S. 534, 7 Sup. Ct. 667, 30 L. Ed. 759. We content ourselves with holding that the equitable considerations which we have recited must, in a court of equity, impel the conclusion that Mrs. Duggan's mere presumption of title, apparently long abandoned and in every respect a stale claim, cannot prevail over the occupants' presumption and evidence of title founded on existing and 30 years' continued undisputed possession.

[3] 6. The Tennessee statute of limitations applicable here in favor of defendants (Shan. Code, § 4458) bars an ejectment suit in seven years; but from the bar of that statute a married woman is exempt. There is seeming anomaly in observing that by this statutory exception Mrs. Duggan is protected against the extinction of her legal title by adverse possession, and yet holding that her right is destroyed by what may happen during that same lapse of time. This anomaly is only superficial. As long ago as 1854, in Cannon v. Phillips, supra, the Ten-

nessee Supreme Court warned against "confounding the doctrine of presumption with the statute of limitations—things which in their nature are very different." This essential difference is clear enough here. The statute of limitations (if it reached her) would bar Mrs. Duggan's right in seven years, regardless of all equitable considerations or of any prejudice to defendants, and even if she had no actual knowledge of the adverse possession, or even if, with knowledge, she had been continually and publicly claiming title and threatening to bring suit. The rules of presumption and of abandonment in analogy to equitable estoppel, as here applied, bar her from asserting a claim, itself based merely on presumption, and after she has kept silence for more than 20 years, though good faith and fair dealing required that she should speak. The exception to the statute saves a married woman from the consequences of not doing promptly what she could not, in her own name, do at all, viz., bring suit at law; but neither by Tennessee common law nor by Tennessee statute does coverture exempt a married woman from the natural consequences of such conduct, in a matter outside of the statute. To Galbraith v. Lunsford, supra, may be added Harris v. Smith, 98 Tenn. 286, 39 S. W. 343, to the effect that her active misleading or equivalent gross negligence will bar her legal right, and, a fortiori, demonstrating that it will turn the scale in equity.

7. It is undoubtedly the rule that, where defendant in ejectment claims under a later deed from one who has conveyed to plaintiff, defendant is estopped to dispute plaintiff's title. Mrs. Duggan seeks the benefit of this rule, because the Prendergast Company claims that the Duggan title had passed to Cass, and passed from him by his deed. Clearly the rule does not here apply. A defendant does not make such a claim at the peril of losing all other defense if that one fails; so here, if the Prendergast Company established its right to the Duggan title through Cass, that would be the end of the case; failing to do so, it may assert its own title by mere long possession and presumption. There is nothing inconsistent in the successive or alternative use of these positions.

No point is made here, nor apparently was in the court below, upon the fact that Mrs. Cass lived until after the suit commenced, and that, as she was entitled to a life interest, those claiming under her deed would not be presumed to hold adversely to Mrs. Duggan, the reversioner. We understand counsel to agree that in Tennessee such an interest as she had before assignment of dower cannot pass by deed; but, whatever effect this consideration might have in applying the statute of limitations, we think that this record shows it is immaterial to the questions which we find here controlling.

The decrees in both cases are affirmed, with costs.