# THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

## *v.*

# THE PRESIDENT AND TRUSTEES OF KNOX COLLEGE.

1. EJECTMENT — *notice to quit.* Where a railroad had lands condemned for right of way, and the damages were assessed, but not paid, and the owner sued and recovered judgment for the damages, but execution was returned no property found; but the company entered into possession, constructed their road with the consent of the owner, and then leased it to another railroad company who were occupying and using this right of way when the suit was brought to recover the land; held that the suit could not be maintained without notice to quit.

2. LANDLORD AND TENANT — *entry* — *notice to quit.* Held that where an entry is made into lands with the assent of the owner, and possession has been long continued, that it is not wrongful until after demand of possession is made, and that the occupant is entitled to notice to quit; it is, however, otherwise when the entry was wrongful in its inception, or has become so afterwards.

APPEAL from the Circuit Court of Peoria county; the Hon. M. WILLIAMSON, Judge, presiding.

This was an action of ejectment brought by the appellee against the appellant, in the Knox county Circuit Court, at the June term thereof, A. D. 1859; the first trial was had before the Hon. JOHN L. THOMPSON, judge of said court, at the March Term thereof, A. D. 1860; the jury being waived, a verdict was found, and judgment rendered for the plaintiff. On the 12th day of October, A. D. 1860, at the October Term of said court, a motion was made to vacate the judgment and for a new trial, all costs being paid, which motion was allowed by the court and a new trial awarded. Afterwards, and at the February Term of said court, A. D. 1863, before the Hon. CHARLES B. LAWRENCE, the then presiding judge of said court, a change of venue was taken to the Circuit Court of Peoria county, the judge having been of counsel in the case.

The general issue was filed, and a trial was had at the February Term, 1864, of the Peoria Circuit Court, by the judge, a jury having been waived by the consent of the parties; on

the trial the plaintiff read in evidence a patent from the United States to Sylvanus Ferris, dated the 10th of October, A. D. 1840, for section twenty-one, in township eleven north, of the base line of range one, east, of the fourth principal meridian, in the district of lands subject to sale at Quincy, Ill.

The plaintiff next offered in evidence a warranty deed from Sylvanus Ferris and Sally, his wife, to the trustees of Knox Manual Labor College, dated January 24th, A. D. 1838, acknowledged March 7th, A. D. 1838, and recorded in the recorder's office in Knox county, March 15th, 1848, conveying the premises in question, among others.

To the introduction of which deed in evidence, the said defendant, by its attorneys, objected, because the plaintiff did not have the right to have or hold real estate. The court overruled said objection, and permitted said deed to be read in evidence, to which ruling of the court the said defendant, by its attorneys, then and there excepted.

The plaintiff then offered in evidence the following stipulation of the parties:

STATE OF ILLINOIS, ⎱ ss.    *Knox Circuit Court, February*
  KNOX COUNTY, ⎰    *Term,* 1861.

The President and Trustees of Knox College
*v.*
Chicago, Burlington & Quincy Railroad Company.

Ejectment *to recover the* real estate described in the declaration.

In this case it is agreed as follows:

*First.* That the Peoria and Oquawka Railroad Company took possession of the land in controversy, as right of way, on the —— day of ——, A. D. 1854, and constructed their railroad upon said land.

*Second.* That the Peoria & Oquawka Railroad Company had the damages resulting to plaintiff, by reason of entry of said land, duly and legally assessed, as is and was by law required, before the commencement of this suit in 1854.

*Third.* That plaintiff, before the commencement of this suit,

brought a suit against the said Peoria & Oquawka Railroad Company upon said assessment, for the same, and recovered a judgment for the full amount thereof; that an execution was issued upon said judgment, and returned unsatisfied, and that the same is yet wholly unpaid.

*Fourth.* When this suit was brought, defendants were in possession of said premises as the lessees of the Peoria & Oquawka Railroad Company; that their railroad running from Peoria to Burlington, over said land of defendants, were running their cars over said land when suit was brought, and still are using and occupying said land as aforesaid; upon said trains and cars carry the United States mails.

*Fifth.* That the name of plaintiff was changed from "Knox Manual Labor College," to "Knox College," after plaintiff received deed for said premises, and before the commencement of this suit, by act of the Legislature of the State of Illinois, each party reserving the right to object to them.

DOUGLAS, CRAIG & FORD,<br>
*For the defendants.*

Plaintiffs then read in evidence their act of incorporation and by-laws; also several amendatory acts which latter were without objection. These amendatory acts give plaintiffs the right to acquire and hold real estate, and to sell and dispose of the same.

The plaintiffs here rested, and the defendant, in order to maintain the issue on its part, read in evidence the following deposition of James M. Gibson, who says:

I was assistant-engineer of the Peoria & Oquawka Railroad Company during the time their railroad was located in Knox county, and the track being laid; know the land in controversy; the line of said railroad track was located over said land by E. B. Kellogg, and I run the levels after the location. I had charge of the construction of that part of the road under Mr. Kellogg.

Interrogatory 4. State what you know, if anything, in regard to the plaintiffs giving consent to the location of said road, and laying of the track across said land?

Answer. I had frequent conversations with persons in interest and connected with the college during the time we were locating, and when we commenced the work on this land; and they said that there was no question about the right of way through any of the lands of the college, as, by an agreement with the railroad company, the college had given them the right of way through their lands, and I understood this to be one of them. I had conversations with President Blanchard, who owned a quarter adjoining, who said there was no question as to this quarter. Dr. Bruce, who was trustee, I think, told me the same, and I believe W. Seldon Gale and others, with whom I conversed, connected with the college, from time to time. Mr. Blanchard was president of the college.

Cross-int. 1st. Do you know whether the railroad company ever had commissioners appointed to assess the damages for constructing said road across the above named piece of land?

Ans. There was a commission issued, but whether it embraced this land or not I do not know, but think it did.

After the evidence was heard, the court found the issues for the plaintiffs, and against the said defendant, to which ruling of the court the defendant, by its attorneys, then and there excepted. The court rendered a judgment in favor of plaintiffs for the recovery of the land; and to reverse that judgment, defendant prosecutes this appeal and assigns for error:

*First.* That the judgment entered in the court below against the appellant is erroneous, in this: That the evidence introduced in said cause upon the trial thereof, was not sufficient to make out said action, or to support said judgment.

*Second.* That upon the evidence, the verdict and judgment, and each of them, should have been for the appellant and not for the appellee.

*Third.* That said judgment is contrary to the law of the case.

*Fourth.* That it is contrary to, and unsupported by, the evidence therein.

*Fifth.* That it is otherwise erroneous and void.

Messrs. WALKER & DEXTER, for the appellant.

The Peoria & Oquawka Railroad Company, and the appellant, as its lessee, having taken and held possession of the premises in question, with the knowledge and consent of the appellees, their possession was not unlawful. On the contrary, it was a lawful one, and they were the tenants of the appellees from year to year; or, at all events, tenants in occupancy of the premises, with the right to make improvements thereon, which was done, to a very large extent.

That such was the relation of the parties, is shown by the case of *Jackson* v. *Bryan*, 1 Johns. 322; *Jackson* v. *Wheeler*, 6 id. 272.

In both of the above cases, the defendants, as in the present case, came into possession under the original lessee, who took possession with the knowledge and consent of the owner; and the law, as established in those cases, applies to the one now before this court.

"But where one enters upon land with permission of the owner, as occupant, without reserving any rent, and with leave to make improvements, whether considered a tenant from year to year, or a tenant at will, he is entitled to reasonable notice to quit." *Jackson* v. *Bryan*, 1 Johns. 322; *Jackson* v. *Wheeler*, 6 id. 272; *Jakson* v. *Laughtread*, 2 id. 75; 4 Kent, 112; Tayl. Land. and Ten. 45, 50.

There was, in the present case, no notice to quit given of any kind before the commencement of this suit, nor does it appear that any steps whatever were taken by the appellees to render the possession of the appellant unlawful before the institution of the suit, and for this reason the judgment should be set aside and a new trial ordered.

Messrs. WEAD & COCHRAN, for the appellees.

I. The 1st section, chapter XL, of the act entitled Evidence and deposition, Purp. Stat. 1857, is as follows:

"The printed statute books of the United States, *of this State*, and of the several States, of the territories and late territories

of the United States, *printed under the authority of said States* and territories, *shall be evidence in all courts and places in this State of the acts therein contained.*"

This is a general law, prescribing what shall be evidence in certain cases.

Is not the book in question a *printed statute book* of this State, *printed under the authority of this State ?*

II. The agreement read in evidence in this case sets forth that the damages resulting to plaintiff by reason of defendant's entry into said land, were duly and legally assessed; that plaintiff recovered a judgment on said assessments, and had execution issued thereon, which was returned unsatisfied.

Does the bringing of this suit by appellee, recovery of judgment, issuance of execution, and a return thereon, *nulla bona,* now preclude him from setting up title to this land? We think not.

III. It cannot be pretended that any *license* was given by appellee to appellant to occupy and use this land. The agreement in evidence in this case states that appellant "had the damages resulting to plaintiff by reason of entry of said land *duly and legally assessed, as is and was by law required* before the commencement of suit in 1854."

Had there been any permission or license to this end, why did appellant have the damages *assessed as was required by law ?* The law only requires an assessment of damages where "the proprietor or proprietors *do not agree* with said corporation as to the amount of damage or compensation which ought to be allowed and paid therefor, or shall not mutually agree on some person or persons to appraise the same."

The fact of there being a *disagreement* on the subject of damages is enough of itself to show that there *was no license given.* And the testimony of Gilson on this subject does not rebut this presumption, if it have any weight at all going to show the giving of a license.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, instituted by appellees, for the recovery of a strip of land, over which appellant's road is located. It is stipulated, that the Peoria and Oquawka Railroad Company took possession of the land in 1854, as right of way, and constructed their road thereon. That they had the damages assessed, growing out of the appropriation of the land for that purpose. That appellees, before the commencement of this suit, brought an action for the recovery of the damages of the Peoria and Oquawka Railroad Co., and obtained a judgment, which has never been satisfied. That appellants were in possession at the commencement of the suit, as lessees of the Peoria and Oquawka road, and were using the same, and running their cars on the road. It appears that at the time this road was being constructed on the land in controversy, the engineer who had charge of the work, had frequent conversations with the president, and a portion of the trustees, who admitted that the company had a right to construct their road on this land. This is evidence of a consent on the part of the board of trustees of the college, that the lessor of appellant might build and operate their road on this land, and appellant has succeeded to their rights under the lease.

This presents the question whether a notice to quit was necessary before this action could be maintained. After such long continued possession by a tenant, under a license to enter and occupy, whether he is to be treated as a tenant from year to year, or at will, he has the right to notice to quit, before an action can be maintained; 4 Kent, 112; *Jackson* v. *Livingston,* 1 Johns., 322. In that case it was held, that where a person entered into possession of land, with the permission of the owner, as a mere occupant, without payment of rent, and made improvements, and afterwads sold his improvements to another person, who went into possession, and the owner sold the land, and his grantee brought ejectment, the person purchasing the improvements of the mere occupant must have notice to quit, and this was after eighteen years possession. He was treated as a tenant from year to year.

In the subsequent case of *Jackson* v. *Laughtread,* 2 Johns.

75, the same rule was there announced. It was there held that a mortgagee before he brings ejectment against the mortgagor, must give six months notice to quit. This case, although it may be that the principle would not be applied in a case between mortgagee and mortgagor, establishes the principle that a tenant or occupant, having no specific agreement for possession, if not in wrongfully, is entitled to notice. Again, in *Jackson* v. *Wheeler*, 6 Johns. 272, it was held, that where a person entered into possession, under permission from the owner, as a mere occupant without paying rent, and the owner sold the land, his grantee must give notice to the vendee of the occupant who had acquired possession, before ejectment could be maintained. And this too, where the occupant disclaimed to hold under the owner, but the disclaimer was made after suit was brought. In that case a recovery was defeated for the want of a notice to quit. This seems to be the English rule, and is recognized in many, if not all, of the States of the Union, in which the common law has not been repealed.

The rule is reasonable, independent of the question of emblements. When a person has entered, with a permission from the owner, he is not a wrong-doer, and cannot be until required by demand to surrender the possession, and refuses. When an entry is without consent, it is otherwise, as his possession is wrongful. But where he had license from the owner, he should not be held liable for costs, until his possession has become tortious. It may be that when the purpose of the occupancy is not agricultural, that a shorter notice will suffice, than where a question of emblements is involved. Still it would have to be reasonable, so as to afford the occupant reasonable time within which to surrender possession. If the occupant entered without right, or if his occupancy becomes wrongful by disclaiming to hold under the owner, or on a refusal to surrender in a reasonable time after demand of possession, the owner might recover.

In this case it appears that the original entry was rightful, and appellants were in possession as the lessees of the first occupants. They did not assert title in their own right, or in

hostility to appellee's title. Until they have done so, or have refused to surrender possession after reasonable notice, they are not liable to be evicted and dispossessed. The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*