# CHARLESTON.

ASHBAUGH *v.* THE CHESAPEAKE & OHIO RAILWAY Co.

Submitted March 19, 1912.   Decided September 30, 1913.

1. RAILROADS—*Grant of Right of Way—Construction—Width Fixed by Use.*

Possession of a strip of land by a railroad company, manifested and evidenced by maintenance of its tracks on a part thereof and inclusion of the residue within a fence and care of it, as by mowing it regularly, for a long period of time, as and for its right of way, under a general and indefinite grant thereof by deed, not specifying its width, without objection on the part of the owners of the tract of land out of which the grant was made, constitutes a practical construction of the grant, fixing and determining the width of the right of way and making it co-extensive with such possession, although the posses-

sion and acquiescence are not shown to have commenced with the date of the deed or the construction of the road.   (p. 769).

2.   SAME—*Grant of Right of Way—Enjoyment—Construction of Side Track.*

The construction of a side track within the area so occupied and used by the railroad company is not an enlargement of the easement granted by the deed and defined by the conduct of the parties.   (p. 771).

(ROBINSON, JUDGE, dissenting).

Error to Circuit Court, Kanawha County.

Action by J. W. Ashbaugh against the Chesapeake & Ohio Railway Company.   Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Simms, Enslow, Fitzpatrick & Baker,* for plaintiff in error.

*A. M. Belcher,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment for the sum of $250.00, complained of on this writ of error, was recovered in an action of trespass on the case for an alleged injury done by the construction of a side track on a strip of land about 30 feet wide and 594 feet long, which the defendant claims as a part of its right of way and which the plaintiff claims as a part of his farm, not included in the right of way.  The assignments of error insisted upon in the argument for the plaintiff in error include only rulings upon instructions and a motion to set aside the verdict.   There is a general charge of erroneous rulings relating to the admissibility of evidence, but there are no specific assignments of such errors in the petition or the brief.

By their deed dated October 6, 1869, Joshua Morris and Benjamin Morris granted the right of way, the width of which is in controversy, with the following specification and description thereof: "The right of way for the construction of a double track of railway through the lands owned by them on the south side of Kanawha river in Kanawha county, West Virginia, provided no injury is done to the buildings thereon said lands lying

above and adjoining the lands of Mrs. Crockett with all the privileges and immunities necessary and requisite for the construction, use and enjoyment of the same." Under this deed, the main line of the Chesapeake & Ohio Railway Company was constructed a great many years ago, and, at the date of the inception of this controversy, it consisted of a double track through the premises. On the north side of the strip occupied by the tracks, there was, at that time, a strip about 40 feet wide, extending to a county road, and about 594 feet long. In the year 1904, the defendant built on this strip a side track, the center of which was distant from the center of the adjacent main track 13 feet. From the plaintiff's fence, south of the south track of the defendant, apparently used and recognized as the limit of the right of way on the south, the distance to the center of the south track is 12 feet, from the center of the south track to the center of the north track 13 feet, from the center of the north main track to the center of the side track 13 feet, and from the center of the side track to the fence running along the south side of the county road, 40 feet, according to the figures given on a map filed as a part of the plaintiff's evidence. The three tracks thus appear to occupy a strip less than 50 feet wide, measured from the fence on the south side of the railroad, but the plaintiff's contention is that, under this grant, the railway company was entitled to use only so much land as would accommodate its two main tracks, amounting to 29 feet, 13 feet between the centers of the two tracks and an allowance of eight feet on each side. On the other hand, the railway company claims a grant of such land as it had the right, under the statute at that time, to condemn, namely 100 feet, and, if not that, land for the accommodation of side tracks, signal towers and telegraph poles, in addition to its main tracks, and lastly so much of the land as it took possession of and has used under the grant.

Along the fence between the county road and the strip in controversy there are telegraph poles, some of which are on the side next to the county road and others on the side thereof next to the railroad. On these poles are the wires of the railway company and the Western Union Telegraph Company. Which company erected them in the first instance, the evidence

72 W. Va.

does not show, but the employes and agents of the railway company say they belong to it. The plaintiff admits that, at no time within the eight years of his ownership of his property, prior to the commencement of his action, did he in any manner exercise any control over the strip in question or make any use of it, nor is there any evidence tending to prove that his immediate predecessor in title, Mary Jane Layden, or his remote predecessors, the Morrises, ever did so. He lived in the town of Marmet, just outside of which his land lies, for a period of about 9 years, before he bought the land, and was unable to say anybody had ever made any use of the strip of land at any time during that period, but refused to admit that the railway company had done so. On the contrary, he denied that they mowed it and kept it clean. Though positively denying this, in one part of his testimony, he says, in another, it did not do so to his knowledge, and he does not think it did. As to the location of the telegraph poles, he said: "I think some are on one side and some on another," speaking of the fence. Having shown his ownership of the Morris land, subject to the right of way granted, he proved by the testimony of a civil engineer that it is possible to build a double track railroad on 29 feet of ground. This witness was interrogated as to whether that would be sufficient for telegraph lines and side tracks, and he said: "No, I didn't say that, simply for the railroad tracks." When asked what would be a reasonable, necessary and proper right of way for a double track railroad, he said: "I could not tell that." Additional testimony of his on cross-examination shows that he did not mean to say 29 feet was a sufficient right of way for a double track railway with "the privileges and immunities necessary and requisite for the construction, use and enjoyment of the same."

The evidence adduced by the defendant tended very strongly to show its dominion over the strip of land for a long period of time. W. S. Spencer, roadmaster of the defendant for a period of about 15 years, ending in 1905, said that part of the road involved here was under his supervision, and he kept the grass mowed on it during all of that time, and that the fence had been built between it and the county road by the railway company in 1893 or 1894. He said the strip was kept clean by the

company clear out to the county road, prior to the building of the fence.   On cross-examination, he was unable to give the dates on which he had seen the men under his control working on the strip, but he was positive he had been there with them.   He states emphatically he had been there and seen the men at work and seen the fence and telegraph poles.   He instances one particular occasion on which he was with the men and tells what they did.   He declares positively that he was there on other occasions and saw them at work, and further that it was his custom to visit them on the line at least once a week. J. W. Brightwell, foreman of carpenters for the railway com-, pany for more than 19 years, says he built that fence for the railway company in the spring of 1893, and that there was no evidence upon the ground then of the existence of a prior fence at that place.   This evidence was supplemented by the testimony of J. P. Nelson and C. W. Johns, civil engineers and employes of the defendant company, tending to show necessity for the use, by the defendant in the operation of its road, of all the land occupied by its tracks and the residue of the strip between the road and the county road and even more.

The court, in the instructions given and its rulings upon requests for instructions not given, wholly ignored the theory of a definition or establishment of the width of the right of way by the conduct of the parties, or, in other words, by practical construction of the grant.   Defendant's instruction No. 2, embodying this theory, was refused.   The grant being general and indefinite in its terms, the rule of practical construction is obviously applicable.   The acts and conduct of both parties prior and subsequent to the grant may be considered for the purpose of ascertaining their intention.   Bigelow, Judge, said, in *Jennison* v. *Walker,* 11 Gray 423: "This rule rests on the principle that when the terms of a grant are general or indefinite, so that its construction is uncertain and ambiguous, the acts of the parties, contemporaneous with the grant giving a practical construction to it, shall be deemed to be a just exposition of the intent of the parties."   In *Bannon* v. *Angier,* 2 Allen 128, the same Judge said: "Where a right of way or other easement is granted by deed without fixed and defined limits, the practical location and use of such way or easement by the

grantee under his deed acquiesced in by the grantor, at the time of the grant, and for a long time subsequent thereto, operate as an assignment of the right, and are deemed to be that which was intended to be conveyed by the deed, and are the same in legal effect as if it had been fully described by the terms of the grant." This principle or rule was applied in *Onthank* v. *Railroad Co.*, 71 N. Y. 194, 27 Am. Rep. 35. In *Indianapolis &c. Co.* v. *Lewis*, 21 N. E. 660, involving the grant of a right of way over certain land, without any specification as to the width of the way thereby conveyed, Coffey, Judge, said: "But in a case like this, where the grant of the right of way does not fix its width, the declarations and acts of the parties are admissible in evidence to fix such width." ˙The proposition has been stated in these words: "What shall constitute a right of way for a railroad is not defined by law, but, like any other easement, it is a subject of contract, and when the contract, as to the width of the right of way, is general or ambiguous, the intention of the parties may be shown by parol evidence of their contemporaneous acts and declarations." *Railroad Co.* v. *Reynolds,* 116 Ind. 356. See also *Prather* v. *Telegraph Co.*, 89 Ind. 501; *Railway Co.* v. *Rayl*, 69 Ind. 424; *Railroad Co.* v. *Reynolds,* 19 N. E. 141. Much additional authority might be cited, but enough has been given to show the application of a well settled rule or principle of law to cases of this kind.

Defendants instruction No. 2, refused by the Court, and, in our opinion, aptly framed to submit this theory of the case, reads as follows: "The Court instructs the jury that if they believe from the evidence that the Chesapeake & Ohio Railway Company in 1869, acquired from J. & B. Morris a right of way for a double track railway with all the privileges and immunities necessary and requisite for the construction, use and enjoyment of the same, and under said deed took possession of the land in controversy, and exercised the privileges and ownership over the same, and have had it fenced for sixteen years, that then they should find for the defendant."

Lack of evidence of agreement upon the width of the right of way by conduct at the date of the deed or construction of the road is urged as an objection to the application of the rule, but the determining conduct need not go back to the date of the

contract. Sometimes it does and its legal effect is then often called contemporaneous construction, but the effect of the conduct of the parties to an indefinite or ambiguous contract is frequently termed practical construction, and these words cover both contemporaneous and subsequent conduct. Beach on the Modern Law of Contracts, says, at section 721: "The subsequent acts are admitted to show how the parties understood their contract, and are a practical construction of it." The rule was so understood and applied in *Camden* v. *McCoy*, 48 W. Va. 377: "Practical construction of contracts is that given to agreements by the parties themselves by acts subsequently done with reference to the contracts. To such exposition of contracts, the courts pay high regard, and will effectuate it if they can do so consistently with the rules of law." *Clark* v. *Sayers & Lamber*, 55 W. Va. 512. Indeed it seems that conduct under a contract by the parties thereto must of necessity be subsequent to the date thereof. Contemporaneous conduct is not necessarily coincident with the date of the contract. The conduct may be subsequent and yet contemporaneous with the operation of the contract. In the light of these authorities, the objection is wholly untenable, and the instruction should have been given. The plaintiff failed to show the slightest objection to the defendant's dominion of the strip of land in controversy at any time within the long period of its duration. Such acquiescence on his part and that of his predecessors is conduct, showing their understanding and interpretation of the grant, and is legally binding upon them. The side track is within the area thus defined as the right of way. The construction thereof involves no enlargement of the easement. Hence the authorities cited against right of enlargement are inapplicable.

The evidence clearly and strongly tending to show definition and establishment of the limits of the right of way was unopposed by any adduced by the plaintiff, as will appear from the statement hereinbefore given. As a basis for a verdict in his favor, he relied altogether upon his title to the land, subject to the granted easement, and proof of the possibility of the maintenance and operation of a double track railroad, without any privileges or conveniences, side tracks, telegraph lines, signal towers or anything other than the mere tracks, upon a 29 foot right

of way.  He offered nothing at all in opposition to the evidence tending to show his acquiescence and that of his predecessors in the claim of the railway company to the strip in controversy as a part of its right of way under the grant in the deed.  Hence the evidence of the defendant as to the establishment of the boundary or limits of the right of way by conduct was wholly unopposed and uncontradicted.  It was clearly sufficient to sustain a verdict and of such volume and force as to render a verdict in favor of the plaintiff untenable and unjustifiable.  In view of this situation, the defendant asked the court to give an instruction prepared and designated as No. 1, requiring the jury to find for the defendant, which the court refused.  In so doing, it clearly erred.  It is the duty of the trial court, when the evidence of the plaintiff is insufficient to sustain a verdict in his favor, or, when a verdict in his favor would be contrary to the law and the evidence, to direct a verdict in favor of the defendant, if requested so to do.  *Hoge v. Railroad Co.,* 35 W. Va. 562; *Knight* v. *Cooper,* 36 W. Va. 232; *Cobb* v. *Lumber Co.,* 57 W. Va. 49; *White* v. *Brewing Co.,* 51 W. Va. 259.

For the like reason, if the court had given defendant's instructions Nos. 1 and 2, and the jury had then found for the plaintiff, the verdict should have been set aside.

For the errors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*

ROBINSON, JUDGE, *(dissenting)*:

The evidence, and the law of the case, do not justify such an extension of the grant as the majority opinion upholds:  The judgment should be affirmed.