# CHARLESTON.

## DULIN v. OHIO RIVER RAILROAD CO.

Submitted January 11, 1912.    Decided November 11, 1913.

1. EMINENT DOMAIN—*Remedy of Property Owner—Ejectment.*
   Ejectment lies to recover land taken by a railroad company for its railroad tracks, without the knowledge, or against the protest, of the owner. (p. 168).

2. SAME—*Remedy of Owner—Defenses—Estoppel by Acquiescence.*
   A land-owner who sees a railroad company constructing its railroad through his land, and makes no objection until it is completed, is estopped to sue in ejectment, or enjoin the operation of the road. (p. 168).

3. VENDOR AND PURCHASER—*Unrecorded Deed—Validity—Subsequent Purchaser.*
   An unrecorded deed for a railroad right of way is void as to a subsequent purchaser of the servient land, without notice thereof. (p. 169).

4. DEEDS—*Date—Presumption.*
   *Prima facie,* the date of a deed is the day of its execution, notwithstanding it was acknowledged at a later date. (p. 169).

5. RAILROADS—*Right of Way—Acquisition—Adverse Possession.*
   The doctrine of adversary possession is applicable to land acquired by a railroad company for its right of way. (p. 170).

6. ADVERSE POSSESSION—*Railroad Right of Way—Permissive Possession.*
   When such right of way is only an easement, occupation by enclosure and cultivation of a part of it by the owner of the servient estate, until it is needed for the operation of the railroad, is presumed to be permissive and not adverse; and the statute of limita-

tions will begin to run only from the time the railroad company has notice of the occupier's hostile claim.  (p. 171).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Wood County.

Action by Glennah Gertrude Dulin and others against the Ohio River Railroad Company and others.  Judgment for plaintiffs, and defendants bring error.

*Reversed and Remanded.*

*Van Winkle & Ambler* and *J. W. Vandervort,* for plaintiffs in error.

*L. N. Tavenner,* for defendants in error.

WILLIAMS, JUDGE:

Gertrude Dulin and others, heirs at law of E. R. Dulin, deceased, recovered, in an action of ejectment against the Ohio River Railroad Company and the Baltimore & Ohio Railroad Company, a narrow strip of ground on which a side track had been laid, and which was claimed as a part of the right of way, and defendants have brought the case here on writ of error.  Both parties claim, mediately, by separate grants from Samuel Dee; plaintiffs, by deed for the land over which the right of way was granted dated the 7th September, 1882, to Alonzo P. Bailey; and defendants, by deed for a right of way fifty feet wide dated the 3rd April, 1882. Defendants' deed, although earlier in date than plaintiffs', was not recorded until the 12th May, 1884, several months after plaintiffs' deed had been recorded; and the deed to Bailey, although later in time, makes no reservation of the right of way, previously granted to the railroad company. The deed for the right of way was made to the Wheeling, Parkersburg· & Charleston Railroad Company, predecessor of the Ohio River Railroad Company.  The line of railroad through the land was surveyed in 1881; and, at the time Bailey took possession in 1882, stakes had been set, indicating the survey which had been made of the center line of the road. In the following year, 1883, the railroad company went upon the ground and constructed a single track road, apparently without objection from Bailey; and it and defendants, its successors, have been operating it ever since.  Bailey and his suc-

cessors in title, the plaintiffs, have occupied and cultivated the ground on the south side of the track up to within three or four feet of the ends of the cross-ties, ever since they acquired title to the land; and in 1893, or earlier, Dunlin built a fence along close to the track, for a part of the distance along the right of way, and enclosed a garden. In 1904, defendants tore down the fence and constructed a siding along by the main track throughout the full length of plaintiffs' land. They protested; and, the next year, brought this action. The center of the main track is 34.7 feet from the door of plaintiff's dwelling house, and the siding is between it and the house.

Relying upon the case of *Porter* v. *Aberdeen etc. R. Co.*, (N. C.) 62 S. E. 741, counsel for defendants insist that, after a railroad company has entered upon land, under a claim of right, and constructed its road, and is operating it, ejectment does not lie. But we do not assent to this broad proposition. That is not the law of this state. Such a rule would be contrary to the land-owner's constitutional right. It would be taking a man's land, not only without his consent, but also without due process; in fact, without any legal process whatever. Because a railroad company is clothed with the right of eminent domain, gives it no excuse to proceed arbitrarily to take an owner's land. It might thus acquire a right where it could not acquire it otherwise. It should proceed regularly to condemn. But if a land-owner, knowing that a railroad company is building its road through his land, makes no objection, he will be estopped either to sue in ejectment or enjoin its operation, and will be limited to his action for damages only. In such case the law implies a grant of license. 33 Cyc. 154; 2 Elliott on Railroads, Sec. 949; 23 A. & E. E. L. 701. Moreover, if he has full knowledge of his own rights, and still raises no objection, he will also be estopped from suing to recover damages. *N. & W. R. R. Co.* v. *Perdue*, 40 W. Va. 442. On the other hand, if a railroad company enter upon land without the knowledge, or against the protest, of the owner, he may sue either in trespass or ejectment, or he may enjoin the construction of the road, until compensation is ascertained and paid. 15 Am. & Eng. R. R. Cases, (N. S.) 409; *Chicago etc. R. Co.* v. *Hopkins*, 90 Ill. 316; *Arrington* v.

*St. P. etc. R. Co.*, 17 Minn. 215; *Cox* v. *L. N. etc. R. Co.*, 48 Md. 178; *Chicago etc. R. Co.* v. *Knox College*, 34 Ill. 195.

In the present case, the railroad was built and in operation when plaintiffs acquired the land; and they are not suing to recover what was occupied by the main track, but only so much as was recently taken for a siding; and they protested, at the time, against its being taken.

Dee's deed to the railroad company bears the earliest date, and, in the absence of evidence to the contrary, deeds are presumed to have been executed on the day of their date. *Colquhoun* v. *Atkinson*, 6 Munf. 550; *Ferguson* v. *Bond*, 39 W. Va. 561. But plaintiffs' counsel insist that this presumption is overcome, in this case, by the testimony of Samuel Dee who, on cross-examination being asked if he did not acknowledge the deed for the right of way at the same time he executed it, replied that he did. We hardly think that overcomes the legal presumption. It is highly probable that the witness did not understand the technical meaning of the word *executed* as applied to deeds. He, no doubt, thought that the acknowledgment itself was an execution of the deed, whereas it was only for the purpose of recordation. He should have been asked when he signed and delivered it. A deed is presumed to have been excuted on the day of its date, notwithstanding it bears acknowledgment at a later date. *Hardy* v. *Norfolk M'f'g. Co.*, 80 Va. 404; *Ferguson* v. *Bond*, 39 W. Va. 561. The deed for the right of way being anterior to Bailey's deed for the land, it is insisted that defendants, being prior in time, are also prior in right. But section 5, chapter 74, Code (1906), avoiding deeds not recorded, as to subsequent purchasers without notice, materially alters this ancient rule of law. Bailey having purchased the land from Dee and acquired a deed making no exception of the right of way, and having recorded his deed first, would have the better right, provided he had no notice of the railroad's prior deed. If Bailey had no notice of the prior deed he acquired the land unencumbered with the right of way, and he could pass his superior right to his grantee, plaintiffs' ancestor. On the other hand, if he was affected with knowledge of the prior deed, his knowledge would affect Dulin's title, because the railroad company's deed was recorded before Dulin bought.

So that, it may be said, in either event, the Dulins stand in Bailey's shoes; they acquired the same rights he had, no more, no less. Whether Bailey did have actual notice is a question for the jury. Notice may be proven by circumstantial, as well as by direct, evidence. *Farley* v. *Bateman,* 40 W. Va. 540. Bailey's acquiescence in the building of the railroad, after his purchase of Dee, is a circumstance which the jury have a right to consider in determining the question.

But apart from the question of prior rights claimed by deed, plaintiffs insist upon their right to recover on either of two other grounds, (1) that the siding is located outside of the bounds of the right of way, as they are defined in the deed under which defendants claim. This relates to location of boundary lines, and is a question of fact for jury determination. (2) Notorious, hostile and exclusive occupancy of the disputed strip, continuously for more than ten years. The Dulins and Bailey, cultivated the land continuously up to within about three feet of the main track; and in 1893, or earlier, the Dulins enclosed by fence, and used a part of it as a garden, but the fence did not extend the full length of the strip. There is no proof that plaintiffs obtained permission from the railroad company to enclose, or cultivate, the land; neither is it proven that they gave the railroad company notice that they denied its claim to an easement, other than what the law implies from such visible occupation. This brings us to a consideration of the question, whether the statute of limitations applies in favor of a person occupying, and claiming adversely land acquired by a railroad company for its right of way. The courts of the different states are in direct conflict on this question; and the members of this court are also divided in opinion on it. Judge MILLER and myself think that the doctrine of adversary possession does not apply to a railroad company's right of way, and the other members of the court hold that it does. We are now disposing of the case on rehearing. It was first decided two years ago, and in a very elaborate and carefully prepared opinion by Judge BRANNON, then a member of the court, he took the same view as Judge MILLER and myself; to speak more accurately, we concurred in his opinion. Our constitution makes railroads public highways, the public is vitally interested in the

efficiency of the services to be rendered, and I am clearly of the opinion that, for reason of public policy, the doctrine of adverse possession should no more be applied to a railroad right of . way that to public highways in general. This principle was applied in the following cases, viz.: *McLucas v. St. Joseph etc. R. Co.,* 67 Neb. 603, 93 N. W. 928; *Reading Co. v. Seip,* 30 Pa. Super. Ct. 330; *Southern Pac. Co. v. Hyatt,* 132 Cal. 240, 64 Pac. 272, 54 L. R. A. 522; *M. K. & T. Co. v. Watson,* 87 Pac. 687; *Slocum v. C. B. & Q. Co.,* 11 N. W. 641; *Pennsylvania R. Co. v. Freeport,* 138 Pa. St. 97; *Union Pac. R. Co. v. Kindred,* 43 Kan. 134, 23 Pac. 112; *Railroad Co. v. French,* 66 Am. St. 752 (Tenn.); *Railroad Co. v. Telford,* 98 Tenn. 294; *Northern Pac. Co. v. Townsend,* 190 U. S. 267; *Sapp. v. Railroad Co.,* 51 Md. 115. Our own case of *Hast v. Railroad Co.,* 52 W. Va. 396, decides by implication at least, that a railroad company will not be allowed to dedicate a portion of its right of way to a municipality, if it thereby cripples its efficiency as a public carrier. *A fortiori,* a private person ought not to be permitted to acquire a superior right by occupation of its right of way under adverse claim of right. But a majority of the court holds that the right of a railroad company does not stand on a par with public highways in general, and that a railroad company is under the same obligation to keep trespassers off its right of way as private individuals are to keep them off their private lands. For this view there is also much authority. Some of the cases so holding are the following, viz.: *Georgia R. etc. Co. v. Gardner,* 113 Ga. 897, 39 S. E. 299; *Illinois etc. R. Co. v. Wakefield,* 173 Ill. 564, 50 N. E. 1002; *Pittsburg etc. R. Co. v. Jellison,* 42 Ind. App. 628, 86 N. E. 501; *Louisville etc. R. Co. v. Smith,* 125 Ky. 336, 101 S. W. 317; *Northern Pac. R. Co. v. Townsend,* 84 Minn. 152, 86 N. W. 1007; *Paxton v. Yazoo etc. R. Co.,* 76 Miss. 536, 24 Sou. 536; *Welsh v. Chicago etc. R. Co.,* 19 Mo. App. 127; *Spottiswoode v. Morris etc. R. Co.,* 61 N. J. L. 322, 40 Atl. 504; *Southern R. Co. v. Gossett,* 79 S. C. 372, 60 S. E. 956; *Texas etc. R. Co. v. Maynard,* (Tex.), 51 S. W. 225; *Northern Pac. R. Co. v. Spokane,* 45 Wash. 229, 88 Pac. 135.

But in the present case, the railroad company did not acquire the fee in the land, but only an easement; and the

owner of the servient estate may lawfully make any use of the land, which does not interfere with the railroad company's enjoyment of its easement. Jones on Easements, sec. 394, and numerous cases cited in Note 3; *Id.*, sec. 478. Therefore, plaintiffs' cultivation of a portion of the right-of-way land was not necessarily hostile, or adverse to the railroad company's right, so long as it did not need to occupy the same land for its purpose; nor did its non-user, for so many years, necessarily evince intention to abandon it. It used all of its right of way that it needed, until it became necessary to occupy more for a side track. "It is not an invasion of the railroad company's rights, nor an unlawful or adverse use of the land appropriated to its right of way, for the owner of the fee to enter on the premises and erect inclosures and platforms, plant trees and flowers, and open artificial lakes, provided these do not immediately interfere with the company's operations, or necessary use of the premises, especially if the right of way is held under a deed that reserves to the grantor the free joint use of the premises for the benefit of his hotel erected on the adjoining property." *Railroad* v. *Donovan,* 104 Tenn. 465.

"Where abutting or adjoining land-owners cultivate and occupy a part of the right of way granted by congress as an easement to a railway company, such possession must be regarded as permissive only, and not hostile or adverse, so as to confer title." *Union Pac. R. Co.* v. *Kindred,* 23 Pac. 112.

"Occupation of right of way by the owner of the fee, so long as it is not required for railroad purposes, does not start the statute of adverse possession running against the railroad company." *Mobile & O. R. Co.* v. *Donovan,* 58 S. W. 309.

"One who holds possession of lands which are subject to the right of way of a railroad cannot acquire prescriptive title as against such railroad, so long as the purposes for which he uses them are not inconsistent with the right of way. The possession cannot be adverse until the railroad needs the property so possessed for railroad purposes." *Railroad* v. *French,* 100 Tenn. 209, 66 Am. St. 752. See also *Sapp.* v. *Railway Co.,* 51 Md. 115.

"There is not an adverse and hostile possession which will give title against a railroad company where a manufacturer

erects scales at the rear of its factory on the right of way of the railroad company, and such company lays a side track thereto, over which it transports cars to and from the scales for the benefit and advantage of both parties." *Michigan Milling Co.* v. *Ann Arbor R. Co.,* 101 N. W. 574.

"Occupancy, by an individual, of parts of the right of way of a railroad company obtained by condemnation proceedings, with elevators, granaries, coal sheds, and similar structures, used in carrying on his business, and by the company, as a common carrier, for convenience in handling his shipments, will not be treated as adverse or under claim of title, unless actual notice of such claim is brought home to the company, or his conduct is such as will, as a matter of law, constitute such notice." *Roberts* v. *Sioux City etc. R. Co.,* (Neb.) 102 N. W. 60.

The presumption being that the occupation of the right of way by the owner of the servient estate is merely permissive, it follows that the statute does not begin to run until actual notice is given to the railroad company that he claims by hostile right, and the burden is upon him who asserts such adverse right to prove that the railroad company had notice that he so claimed.

Counsel for defendants complain of the action of the court in giving plaintiffs' instructions Nos. 3 and 5, and in refusing defendants', Nos. 2, 3, 6, 8, 9, 10, 15, 16, and 17. The questions involved in the instructions are practically settled by the main questions already decided; and it is not necessary to point out the particular error in each. The case was tried upon the theory, entertained by the trial judge, that the statute of limitations began to run against the railroad company, at least from the time plaintiffs enclosed a portion of the right of way, and certain instructions were given upon that theory; and also upon the theory that such visible occupation by plaintiffs, without more, was notice to the railroad company of their adverse claim of right. But, as we have said, plaintiffs being the owner of the servient estate, occupation by them is not necessarily notice of an intention to claim adversely. Plaintiffs' instructions Nos. 3 and 5 should both have been refused. There was no evidence to support the theory that defendants had abandoned any portion of the

right of way, nor was the exclusive occupation of a part of the right of way, for ten years, sufficient of itself to entitle plaintiffs to a verdict. For the error in giving those instructions the judgment must be reversed, the verdict set aside and the case remanded for a new trial. But the most of what we have said will be applicable on the new trial, only in case it be proven, to the satisfaction of the jury, that Bailey was affected with notice of Dee's deed to the railroad company, at the time he purchased the land, because it had not then recorded its deed.

The judgment is reversed, the verdict set aside, and a new trial awarded.

*Reversed and Remanded.*