# CHARLESTON.

C. L. MILLER *et al. v.* CHESAPEAKE & OHIO RY CO.

Submitted February 27, 1923.    Decided March 6, 1923.

1.  DEEDS—*Construction of Deed by Parties Adopted.*
    Where a deed for a right of way for a double track railway is ambiguous and uncertain as to the width of the right of way. but the parties thereafter treat the right of way so granted as being 100 feet wide, the court will adopt the practical construction placed thereon by the parties. (p. 263).

2.  SAME—*Grantor's Construction of Right of Way—Grant Shown by Subsequent Deeds.*
    Subsequent deeds made by the same grantor, some to the railway company, and others to third parties, recognizing and adopting the 100 feet width may be looked to as evidence of the grantor's construction of the original grant of the right of way. (p. 264).

3.  SAME—*Grantor Held to Have Recognized Width of Right of Way.*
    Where an owner grants a right of way for a double track railway, so that the width thereof is ambiguous and uncer-

tain and afterwards conveys land owned by her adjacent, to
the right of way, describing it as "beginning at a stake on
the west side of the railroad and fifty feet from, the center
of said railroad," she unequivocally recognizes the right of way
therefore granted adjacent to such parcel as being 100 feet
wide. (p. 264).

4.  RAILROADS—*Grant of Right of Way Carries Only Easement.*

    A grant of a right of way to a railroad carries only an
    easement in the land and not the fee.

5.  EASEMENTS—*Occupation of Part of Right of Way Granted to
    Railroad Presumed to be Permissive.*

    Occupation of a part of such easement by the owner of the
    adjacent property as a road until it is needed for the operation
    of the railroad is presumed to be permissive and not ad-
    verse. (p. 264).

6.  HIGHWAYS—*Mere Use of Road by Public Will Not in Ab-
    sence of Dedication, Constitute it Public Road Without Ac-
    ceptance of it by Public Authority.*

    But the mere use of a road by the public for however long
    a period, in the absence of a dedication for that purpose will
    not make it a public road. There must be some acceptance
    of it by public authority, having charge of public roads, be-
    fore it can be deemed a public road, binding the public
    authority for its care and maintenance, or a dedication thereof
    by the owner. (p. 264).

    (LIVELY *and* McGINNIS, Judges, absent).

Appeal from Circuit Court, Summers County.

Suit by C. L. Miller and others against the Chesapeake
& Ohio Railway Company. From a decree refusing an in-
junction and dismissing the bill, plaintiffs appeal.

*Affirmed.*

*James H. Miller* and *A. D. Daly,* for appellants.
*Fitzpatrick, Brown & Davis* and *H. S. King,* for appellee.

MEREDITH, JUDGE:

Plaintiffs complain of a decree of the circuit court of
Summers County, entered January 24, 1922, refusing an
injunction and dismissing their bill by which they sought
to enjoin the defendant from filling up a roadway adjoin-

ing plaintiffs' land and occupying it with its railway tracks, and from flooding their lands by diverting water thereon.

Plaintiffs' lot forms an irregular triangle at the junction of defendant's main line of railway with New River, in the City of Avis. The eastern side, adjoining the main line right of way, is about 600 feet long; the northwestern side, adjoining a railroad switch, which extends from the junction along New River, is about 614 feet long; and the two connecting lines, closing the triangle on its southern side, aggregate approximately 246.2 feet; so that their lot is about 600 x 614 x 246.2 feet. South of their lot in the direction of the main part of the city are a number of other lots, many of which have dwellings located thereon, and which face toward the main line of the railway. Some 800 or 1000 feet south of plaintiffs' lot, Main Street, a paved way, crosses the main line from east to west. Between this street and plaintiffs lot a number of lots were laid out along the railway line and about a dozen buildings erected thereon; a road, called Railroad Avenue, extends north from Main Street along the railway, in front of these buildings, up as far as plaintiffs' lot, and possibly a third of the way in front of their lot. Many years ago there was a brick plant located on plaintiffs lot, and we infer that the clay or other material from its northern portion was dug out in operating that plant. This left a hole or swamp there. Later the brick yard gave way to an iron foundry; this was rebuilt about 26 years ago and is near the southern line on their lot. Railroad Avenue along the main line of the railway has been used during all these years in hauling to and from these plants and in connection with the other buildings on the other lots above mentioned fronting the railway. There may be one other way to pass from Main Street to plaintiffs' lot, that is, by Grace Street, coming in at the rear, though plaintiffs claim this route is inconvenient and impracticable.

The main line extends along the base of a hill or cliff and a small drain runs across the right of way through plaintiffs' lot to New River. Its natural course does not now clearly appear. When the railroad was built the water was

confined in a culvert under ·the tracks, crossing from the southeast to the northwest side, then along the west side of the tracks in an open drain to a point approximately mid-way of plaintiffs' lot, thence through their lot to the river.    It is claimed by defendant that its original course through plaintiffs' lot was through that portion covered by the foundry buildings and that plaintiffs or their predecessors in title changed it to its present course.    The defendant, in order to make its fill over what it claims is its property adjacent to plaintiffs' lot, recently extended this culvert along this open drain to the point where the drain entered plaintiffs' land. Plaintiffs aver that defendant thereby is casting a large volume of water from its tracks upon plaintiffs' lands and causing their land to be flooded and swampy.    North of the point where the drain enters plaintiffs' lands defendant has placed cribbing along the lot for the purpose of holding the fill.

The railway company claims title to Railroad Avenue.    In December, 1919, it began filling up this roadway for the purpose of laying an extra track along there.    No preliminary injunction was asked, but while the work was in progress, at April 1920 rules plaintiffs filed their bill praying for an injunction to restrain defendant from further doing the acts complained of and to compel it to remove the fill made in the roadway.

The width of defendant's main line right of way is the real question.    A determination of that determines the issues. Defendant claims its right of way is 100 feet wide.    If so, Railroad Avenue is on 'its land, and it has a right to occupy it with its culvert, fill and tracks.    On April 25, 1870; Avis Hinton and her son, Silas Hinton, owned all the lands in that neighborhood, including the lands in controversy.    On that date they conveyed to Chesapeake and Ohio Railroad Company ''the right of way for the construction of a double track railway through the lands owned by the said party of the first part on New River in Greenbrier and Monroe Counties, with all the privileges and immunities necessary and requisite for the construction, use and enjoyment of the same.    This grant. of the right of way is on condition that

said road shall be located and constructed between their
dwelling house and the hill and not nearer than thirty feet
to the dwelling.''

On a final location of the railway, it was found necessary
to move it nearer the river, in the vicinity of Avis Hinton's
home, so as to avoid the hill, so on May 27, 1873, the com-
pany purchased from Avis Hinton and others a tract of 100
acres, subject to certain small reservations, and a second
parcel described in the deed as follows:

> "A strip one hundred feet wide, being fifty feet
> on each side of the center line of the C. & O. Rail-
> road as at present located and constructed, be
> ginning at station 46 and running to station 50
> -:- 35.6 as numbered on the 1st residency of the
> 1st New River Division of the Chesapeake and
> Ohio Railroad, embracing the house in which Avis
> Hinton formerly lived. Reference is here made
> to the annexed plat as part of this deed.

Other deeds made by Avis Hinton about the same time
recognized the right of way through that vicinity to be
100 feet wide. She then owned the lot now owned by
plaintiffs and on which their rights in this suit are based.
On April 23, 1877, she entered into a contract under seal
whereby she sold and agreed to convey to W. P. Philipps
a lot, described by her in the deed as:

> "Beginning at a stake on the west side of the
> railroad and fifty feet from the center of said
> R. R. thence N 5½ W 238 feet to a stake, thence
> N 76 W 132 feet to a stake, by Week's switch,
> thence S 25 W 179 feet to a stake, thence S 13
> W 85 feet to a stake, N 89 E 240 feet to the be-
> ginning, and containing nearly 1½ acres."

On January 19, 1880, she sold to W. P. Phillips another
lot described:

> *"Beginning at the northeast corner of a lot
> formerly sold to said Phillips on the line* of the
> C. & O. R. R., thence *with said R. R. Co.'s* line
> north ——— feet to the river, thence south with

the river ——— feet to a point opposite said Phil-
lip's lot, thence east ——— feet to the beginning.
The right of way for R. R. switch reserved out
of said land fifteen feet wide."

This switch, known as the Week's switch, extends along
the river in the rear of plaintiffs' lot, which is the one
last above described.    They derived title thereto through
various conveyances not necessary to mention.    The ma-
teriality of the last two descriptions is apparent.    The first
starts at a stake on the west side of the railroad right
of way and fifty feet from the center line and runs with
the right of way line to a stake.    That second stake is lo-
cated on the northeast corner of that lot, and is made the
beginning corner of the second description in the contract
with Phillips.    The second description starts there and runs
with the right of way to New River.    Both descriptions
thus necessarily recognize that the right of way is 100 feet
wide.    The two lots were conveyed to W. P. Phillips and
S. E. Phillips by Commissioner W. R. Thompson pursuant
to a decree in a chancery cause prosecuted against them
by Avis Hinton, and the deed follows the same descriptions.
Plaintiffs' lot therefore extends only to the 100 foot right
of way of defendant.    The roadway is not located on any
part of plaintiffs' lot.    We do not understand that they
claim that it is on their land, but they say the defendants'
right of way conveyed in the Avis Hinton deed does not
cover a strip 100 feet wide, but only sufficient for a double
track and that it is necessarily limited to that width or to
such width as it has actually occupied; that when it built
its main line in the early seventies, now its west bound
track, and its east bound track, about 1896, it occupied
more than was necessary for a double track, having at some
time constructed a switch next to the hill, called its "drill
track," and extended its fill toward plaintiffs' lot down
to the water drain or ditch; that the defendant's right is
necessarily limited to the toe of the fill; that the road
ran between plaintiffs' land the other privately owned
lots, and the toe of the old fill, and that defendant can not

now claim beyond that toe. If their contention be correct then when Avis Hinton conveyed the two parcels to the Phillipses she retained and did not convey a strip of ground between these lots and the right of way. But that could not be because the deed calls for the right of way line of the defendant as a monument. It unequivocally recognizes that, and as being located 50 feet from the center line. Now the defendant's evidence very clearly establishes the fact that the center line of its right of way along there is the center line of its west bound track, which was the track first built. Besides, the presumption is against the plaintiffs' contention. "Generally it will not be presumed that a party granting land intends to retain a long narrow strip next to one of his lines; but if the courses and distances approximate closely to a line or corner of the tract owned by the grantor—especially if the description in the deed corresponds, exactly or substantially, with the description in the title papers under which the land is held—it will be presumed that the lines mentioned are intended to reach the corners and run with the lines of the tract though the trees marked and described have disappeared before making the deed." *Western Mining Co.* v. *Peytona Coal Company*, 8 W. Va. 406; *Brown Oil Co.* v. *Caldwell*, 35 W. Va. 95, 13 S. E. 42; *Clayton* v. *County Court*, 58 W. Va. 253, 52 S. E. 103, 2 L. R. A. (N. S.) 598.

The roadway in question is not called for or mentioned in any of the deeds to the defendant. So far as we can ascertain from the record, it has in no way recognized it. It merely permitted its right of way to be used in that way for convenience until such time as it needed it for purposes of its own. Railroad Avenue, though used by the public, is not a public road. No act of dedication by defendant is shown. No work was ever done on it by public authority, nor was its existence as a public road ever recognized by any such authority. At least, none is shown. We must therefore conclude that it is not a public road, but the public has used it by mere license from defendant, which license may be revoked.

While the original grant of Avis Hinton is for a right

of way for a double track, her subsequent deeds for land along that right of way recognize it as being 100 feet wide; other deeds, one to the defendant made by her, so recognize it.    This court must necessarily adopt the practical construction placed on it by the parties.    The record shows it was so construed from the beginning by the defendant. The road is occupied in part by telegraph lines, presumably under defendant's authority or control.    *Ashbaugh* v. *C. & O. Ry. Co.,* 72 W. Va. 765, 79 S. E. 741.

Can plaintiff acquire an easement over defendant's right of way by user?    They and their predecessors in title have used this Railroad Avenue for more than 25 years, certainly long enough to acquire a right by prescription, if such right can be so acquired.    But defendant's counsel reply, and correctly so, that a grant of a right of way carries an easement only, and not the fee, to the land granted, citing Uhl v. Ohio River R. Co., 51 W. Va. 106, 41 S. E. 340. This avenue has not been closed by plaintiffs.    It has not been held by adverse possession, under any notice to defendant of any hostile claim.    Plaintiffs' use therefore must be deemed to be permissive, and in no way adverse.    *Dulin* v. *Ohio River R. Co.,* 73 W. Va. 166, 80 S. E. 145.

However, plaintiffs' claim in their bill is not based on any private easement over Railroad Avenue; they assert it is a public road.    But the mere use of a road by the public for however long a time will not make it a public road.    The mere permission by the owner of the land to the public to pass over the road is, without more, a mere license.    If it is intended to be dedicated to the public by the owner, it must in some way, be accepted by the public authority, having charge of roads.    *Dicken* v. *Liverpool Salt & Coal Co.,* 41 W. Va. 511, 23 S. E. 582; *Hast* v. *Piedmont & Cumberland Ry. Co.,* 52 W. Va. 396, 44 S. E. 155. It necessarily follows that plaintiffs have not been deprived of any right to the use of this road.    It does not cover any of their land.    It is not a public road over which the public has any control and defendant has the right to use it for its purposes.

It has not been shown by plaintiffs that defendant's cul-

vert diverts the water from its natural course upon plaintiffs' land. On the contrary, the evidence tends to show that whatever diversion of the water out of its natural course was effected, it was done by plaintiffs or their predecessors in title.

For the foregoing reasons, the decree will be affirmed.

*Affirmed.*