# CHARLESTON.

JAMES L. HAWLEY *v.* W. C. LEVY *et al.*

(No. 5270)

Submitted March 10, 1925.    Decided June ·9, 1925.

1. LANDLORD AND TENANT—*Only Interest of Buyer Under Conditional Sales Contract Liable to Distress by His Landlord.*

   When the lien of a seller of goods is valid against the creditors of the buyer thereof, at the time the buyer carries the goods upon leased premises, only the interest of the buyer in such goods is liable to distress by his landlord. (p. 338).

   (Sales, 35 Cyc. p. 678).

2. CONTRACTS—*Contract Held to Have Become Effectual on Day of Delivery.*

   In the absence of evidence to the contrary, a contract is presumed to have been executed on the day it is dated. It being shown, however, that delivery of the instrument was not made until a later day, it is held that the contract did not become effectual until the day ·of delivery.    (p. 339).

   (Contracts, 13 C. J. § 943).

   (Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi).

Error to Circuit Court, Ohio County.

Action by James L. Hawley against W. C. Levy and others, partners doing business as Electrik Maid Bake Shops, and

others. Judgment for plaintiff, and defendants W. C. Levy and others bring error.

*Reversed.*

*Riley & Riley,* for defendant in error.

*Milton P. Firestone,* and *McCamic & Clarke,* for plaintiffs in error.

HATCHER, JUDGE:

The *dramatis personae* in this litigation are (1) J. L. Hawley, a landlord, of Wheeling, West Virginia, (2) William C. Levy, Allen L. Firestone and Milton P. Firestone, of St. Paul, Minnesota, partners doing business as Electrik Maid Bake Shops, who were the sellers of a bakery equipment under a conditional sales contract to (3) C. R. Nesbitt, who with his partner, Agnes Nesbitt, conducted a business under the name of Electrik Maid Bakery, in a building in Wheeling owned by Hawley. The bakery equipment was seized under a distress warrant issued by the landlord for arrears in rent. The sellers of the equipment claim that it is exempt from the landlord's lien by reason of the lien reserved to them in the sales contract. The sellers seek here a reversal of a judgment in the Circuit Court of Ohio County in favor of the landlord.

The Nesbitts entered into possession of the Hawley building on April 1, 1923. At a date not shown by the evidence, Levy had some negotiations with C. R. Nesbitt relative to selling him the bakery equipment, which resulted in Nesbitt agreeing, as he said, "to buy the goods", although he qualified that statement by saying that no contract was then entered into. The bakery equipment was shipped by railroad from St. Paul on April 5, 1923. On April 7, 1923, a bank in St. Paul mailed to a bank in Wheeling for collection a draft on C. R. Nesbitt for $1,638.09, accompanied by invoice, bills of lading, and three copies of a contract between Nesbitt and the Electrik Maid Bake Shops. The contract was dated April 6, 1923, on which date it had been signed by the seller. On April 17, 1923, the bakery equipment, consigned to the seller, arrived at the yards of the B. & O. Railroad Company at

Wheeling, with an order to notify C. R. Nesbitt.  On April 19, 1923, Nesbitt signed the contract, paid the draft, received the equipment from the railroad company, and had it all transferred to the leased property, with the exception of a "dough mixer" which was not taken to the rented premises until April 27th.

The written contract dated April 6, 1923, and executed by C. R. Nesbitt on April 19th, was recorded April 27th, in the office of the clerk of the county court of Ohio County. It states that the purchase price of the bakery equipment was $3,750.00 f. o. b. St. Paul, Minnesota, of which amount $500.00 was paid cash at the date thereof, and the balance of $3,250.00 was to be paid by the buyer, as follows:  $1,375.00 was to be paid on a sight draft to be presented with the bill of lading for the equipment, and $1,875.00 was to be paid in equal monthly installments of $156.25 each.  The contract further states that delivery of the equipment was to be made by April 15th; that the title to the equipment should remain in the seller until full payment was made of the purchase price, but that all risk of loss or damage or injury to the equipment should fall on the buyer, after delivery of the equipment f. o. b. St. Paul.

The petition of the seller alleges that $1,422.65 of the purchase price had not been paid.  Nesbitt testified that he would not deny the amount alleged due the seller and that his indebtedness on the equipment was "around" those figures.

The landlord makes two contentions, which, as stated by his counsel, are as follows:

> "First:  The defendant in error by virtue of the provisions of chapter 93 of the Code acquired the statutory lien for a year's rent upon the property here in controversy, which must prevail over the claim of the plaintiffs in error as chapter 93 is not repealed, changed or modified by chapter 99a, known as the Conditional Sales Act.
> "Second:  Even if the rights of the landlord are made subordinate by chapter 99a of the Code, yet the defendant in error must prevail as the contract of sale in this case was made on April 6, 1923,

and said contract was not recorded until after the lien of the defendant in error attached, nor was it recorded within ten days after the actual consummation of the sale from Levy to the Nesbitts.''

Section 11 of chapter 93 of the Code provides that:

''The distress may be levied on any goods of the lessee, or his assignee or under tenant, found on the premises, or which may have been removed therefrom not more than thirty days. If the goods of such lessee, assignee, or under tenant, when carried on the premises are subject to a lien, which is valid against his creditors, his interest only in such goods shall be liable to such distress.''

Consequently, the rights of the landlord in this case depend on a determination of whether the lien of the seller is *valid against the creditors of C. R. Nesbitt.* The contract between the seller and the buyer herein being a ''conditional sale'' is subject in all respects to the provisions of chapter 99-A of the Code. Sections 4 and 5 of this chapter declare a reservation of title in a conditional sale to be valid against *all persons* who have actual notice thereof, or to whom constructive notice is given by recording the sales contract ''within ten days after the making of the conditional sale.'' See hereon *Brown* v. *Woody,* decided by this court March 17, 1925. The sales contract was recorded in compliance with section 6 of said chapter, on April 27, 1923. The seller claims that the conditional sale of the bakery equipment was made on April 19th, and within ten days of the recordation of the contract thereof.

The landlord bases his contention that the sale took place April 6th on the fact that the contract is dated April 6th; that a payment of $500.00 was made on the purchase price of the goods on that day; that the purchase price included a delivery of the equipment by the seller f. o. b. St. Paul, and that after such delivery any loss or damage to the equipment was to be borne by the buyer. Counsel for the seller contend that the $500.00 payment was merely a guarantee of the good faith of the buyer in the preliminary negotiations;

that the only effect of the f. o. b. clause was to obligate the buyer to pay the freight; that the seller shipped the goods in the seller's name, and so conducted the entire transaction that the buyer could not get possession of the equipment until he had first signed the sales contract.  Counsel say that "it takes two to make a bargain" and there was no meeting of the minds of the parties until Nesbitt signed the contract on April 19th; that prior thereto, the agreement between the parties was wholly tentative, and that Nesbitt could not have gotten the goods until he accepted the terms of the contract.

We consider the argument of counsel for the seller well taken.  After April 6th, there were yet vital things for both parties to do before the contract would become effective. Nesbitt was yet to pay the sight draft, and agree to and sign the contract.  The seller was yet to make delivery of the goods.  If Nesbitt had never paid the sight draft and signed the contract, the seller would not have delivered the goods. In case there had been no payment of the draft, no signing of the contract (by Nesbitt), and no delivery of the goods, it certainly could not be seriously contended that a conditional sale of the goods in question had been consummated. The conduct of both seller and buyer clearly indicates that it was mutually understood that the payment of the sight draft and the signing of the contract should take place before the possession of the goods should be delivered to the buyer.  So far as the record discloses, Nesbitt had never even seen the contract until April 19th; if so, it would naturally follow that there was no binding agreement reached in the matter until after he had become acquainted with and agreed to the terms of the contract.

In the absence of evidence to the contrary, an instrument is supposed to become effective on the date it bears.  This is merely a presumption, however, and may be rebutted by evidence.  Even in case of a deed, the actual date of delivery may be shown, and if the time of delivery is different from the date of the instrument, the deed is effective only from the date of delivery.

> "A deed takes effect at the time of its delivery
> and not at the time of its date."
> 99 W. Va.

*Goswitz* v. *Jefferson,* 123 Minn. 293.

"The date is not an essential part of a deed. The deed will be good although it have no date, or a false or impossible date; and will take effect from the time of delivery."

*Swan* v. *Hodges,* 40 Tenn. 251.
2 Bl. Com. 304.
*Geiss* v. *Odenheimer,* 4 Yates (Pa.) 278.
*McMichael* v. *Carlyle,* 54 Wis. 504.
18 *C. J.* page 216, par. 126.
Williston on Contracts, par. 210.
*Dulin* v. *Ohio River Ry. Co.,* 73 W. Va. 166.
*Furguson* v. *Bond,* 39 W. Va. 561.

There is no evidence or contention even, that April 19th was not the day upon which the contract was signed and the goods actually delivered to the buyer. Delivery of the goods and delivery of the contract having been made on that day, we must hold that April 19th was the day upon which the conditional sale was made. It would therefore follow that the sales contract was recorded within ten days after the making of the conditional sale, and that the title of the seller to the equipment, *when it was carried on the leased premises, was valid against the creditors of C. R. Nesbitt.* Being valid against such creditors, only the interest of Nesbitt in such goods is liable to the landlord's distress, by virtue of the express provision of section 11 of chapter 93—the chapter under which the landlord seeks to establish his lien.

The judgment of the circuit court is therefore reversed.

*Reversed.*